FRANK SEWARD ET AL. *vs.* THE M. SEWARD AND SON COMPANY.

Third Judicial District, Bridgeport, October Term, 1916.
PRENTICE, C. J., THAYER, RORABACK, WHEELER and BEACH, Js.

There is no occasion to correct findings which are supported by evidence or which are not unreasonably found upon conflicting evidence; nor will desired additions to the finding be made if they are not material to the conclusions reached, nor if they are in conflict with inferences

and conclusions which are logically and legally drawn by the trial court.

This court will not recommit a draft-finding for the purpose of having its paragraphs marked "proven" or "not proven," if none of the material findings as made, or conclusions reached by the trial court, would be affected thereby.

The question of whether or not one was the "procuring cause" of a sale, is one of fact, and its determination is conclusive unless contrary to, or unsupported by, the subordinate facts, or unless it is in conflict with the settled rules of logic and sound reasoning.

A court may authorize the employment of a broker to sell the plant in the hands of its receiver, also the payment of a reasonable sum for services rendered in effecting the sale; and this sum, in the absence of a specific agreement, would be the customary commission paid for a sale of like property.

A broker may have been the "procuring cause" of a sale, as was found in the present case, notwithstanding the receiver himself actually made it, and upon terms other than those upon which the broker was authorized to sell. So, too, it is not essential that the attention of the buyer should have first been called to the plant in question after the broker's employment.

The issue of whether a broker took the initiatory step in effecting the sale of a plant in the hands of a receiver, is not affected by the fact that the latter did not give the broker a selling price nor agree with him as to his own commission.

In the present case all the stockholders of the plant in the receiver's hands agreed to sell and transfer their stock to a trust company as the agent of the purchasing corporation, upon payment of $5,000 in cash to the trust company as agent of the selling stockholders, and upon further payment of $5,000 at the end of each of four successive intervals of thirty days and the assumption by the purchaser of an outstanding mortgage of $25,000 upon the property. As part of the agreement the trust company promised to apply these payments to the discharge of the claims presented to the receiver (other than the mortgage indebtedness), amounting to about $23,000, and also the expenses of the receivership and of the stockholders under this arrangement. In an application to the court by the receiver to approve this agreement it appeared that the accounts and bills receivable, together with the cash upon the purchase price of the shares of stock would be over $36,000. *Held* that the obvious purpose of this plan was to effect an indirect sale of the plant upon the terms of the original offer, which *W* had obtained for a direct sale, which it was supposed the receiver could not make; and therefore, upon the approval of the agreement by the court, that *W* was entitled to a reasonable commission.

Argued October 25th—decided December 19th, 1916.

APPEAL by the receiver of the defendant company, and by others, from an order of the Superior Court in New Haven County, *Webb, J.*, in receivership proceedings, allowing in full a claim of Albert Widman for $2,500 as a commission for securing a purchaser of the real estate and plant of the defendant company in the hands of the receiver. *No error.*

*Leonard M. Daggett*, for the appellants (receiver of the defendant company *et als.*).

*Arthur B. O'Keefe*, with whom were *David E. Fitz-Gerald* and *George W. R. Hughes*, for the appellee (Albert Widman, claimant).

WHEELER, J. This appeal is taken from an order of the Superior Court allowing the claim of Widman for $2,500 for a broker's commission on a sale of the plant of the M. Seward and Son Company in the hands of a receiver of said court.

Four questions are raised: Whether the finding should be corrected. Whether the paragraphs of the draft-finding should be marked proven or not proven. Whether the conclusion of the trial court that the claimant was the procuring cause of the sale, can be supported either as a conclusion of law or of fact. And whether the claimant, if entitled to a commission, should have been awarded $2,500.

As we read the evidence we either find the findings supported by the evidence, or found upon conflicting evidence and not unreasonably found, and the additions desired so immaterial in character that their finding would not affect the conclusions reached, or else in conflict with the inferences and conclusions drawn by the trial court which cannot be held to have been drawn either contrary to the evidence or the rules and principles of logic or in violation of law.

We will have occasion to refer specifically to two or three of the corrections asked for. Aside from these, the motion to correct does not seem to require further consideration.

We cannot see that any of the material findings made or conclusions reached would be affected if the paragraphs of the draft-finding were marked proven or not proven as our rules require, and hence we cannot sustain the appellants' exception and recommit the finding for the purpose of having the paragraphs so marked.

It was within the power of the court to authorize the receiver to employ an agent to sell the plant of the Seward and Son Company, and, if no specific compensation was agreed upon, it was clearly within the power of the court to authorize the receiver to pay a reasonable sum for the service it had authorized. In the absence of a special agreement, the customary commission for the sale of property of this character would measure the value of the services, and furnish the court a satisfactory standard by which to measure the reasonable value of the services to the receiver and to fix a reasonable commission. The court had before it ample evidence of the customary commission, and in fixing the amount in reliance upon that it committed no error.

The chief ground of appeal is the conclusion of the court that Widman was the procuring cause of the sale. This finding is one of fact, and is conclusive unless contrary to or unsupported by the subordinate facts, or in conflict with the settled rules of logic and reason, or found in violation of some rule or principle of law. *Hoadley* v. *Savings Bank of Danbury*, 71 Conn. 599, 608, 42 Atl. 667. These subordinate facts must establish that Widman, when engaged in the course of his employment to find a purchaser for this plant, first brought to the receiver's attention the ultimate pur-

chaser, and the sale followed in consequence. The trial court has found that Widman was consulted by the Maxim Munitions Corporation with a view to purchasing, or securing for purchase, manufacturing plants in New Haven. He thereafter was employed by the receiver of the M. Seward and Son Company to sell the plant of this company. He investigated the plant and brought the representative of the Maxim Corporation to visit the Seward Company plant. Thereafter Widman visited the receiver and informed him of this visit and that his parties were interested. The receiver promised to pay him a liberal commission, the same to be settled by the court. Widman visited this plant with several other representatives of the Maxim Corporation, and on May 18th, 1915, wrote the receiver for a copy of the inventory of the Seward Company, and later on in May ascertained what the plant was assessed at. On October 18th, 1915, representatives of the Maxim Corporation called on Widman and talked over this purchase, and then saw the receiver and made him an offer for the plant of $50,000, payable $5,000 in cash and $20,000 in payments of $5,000 every thirty days, and the balance by the assumption of the mortgage of $25,000 upon the plant.

Assuming that the receiver possessed the authority to have made the sale upon these terms, it could not be questioned that Widman was the procuring cause of the sale. It would have been wholly unimportant to this conclusion that the owner or receiver actually made the sale, or that the receiver made the sale on terms other than his agent had authority to sell for. *Schlegal* v. *Allerton*, 65 Conn. 260, 264, 32 Atl. 363. Nor was it of any importance that Widman had not been in communication with the receiver from May until late in the following October, and therefore a finding of this fact, whether Widman after his employment first brought

the purchase to the attention of the purchaser is immaterial to the issue. *Duncan* v. *Kearney*, 72 Conn. 585, 45 Atl. 358. It is also immaterial that the receiver did not give Widman a selling price, nor agree with him as to his own commission. These considerations do not affect the issue of whether Widman took the initiatory step in effecting the sale.

The contention of the receiver and the stockholders, that Widman was not the procuring cause of the sale, rests upon their claim that a sale of the plant was not effected, but merely a sale of the stock of the stockholders. That claim rests upon these additional facts:—

In the belief that he had no authority to sell for anything but cash, the receiver originated this plan, which was adopted. The stockholders of the Seward Company agreed to sell and transfer their stock to the Maxim Munitions Corporation through their agent, the Union and New Haven Trust Company, upon the payment of $25,000 to the Trust Company as their agent, payable $5,000 at the date of the agreement of transfer and the balance in equal instalments of $5,000 at successive intervals of thirty days, and in further consideration of the assumption by the Maxim Corporation of the $25,000 mortgage upon the plant of the Seward Company. As part consideration of its agreement with the Maxim Corporation and the stockholders, the Trust Company agreed to pay from the proceeds of these payments to it, the claims presented to the receiver against Seward and Son Company, exclusive of the mortgage indebtedness, and also the expenses of the receivership and of the stockholders under this agreement.

The receiver made application to the court to authorize him to carry out his agreement with the Trust Company, and to deliver to it the plant of the Seward

Company, and recited in his application that the claims against the receiver were about $23,000 exclusive of the mortgage indebtedness and of the receiver's fees and the services of his attorneys, and that the accounts and bills receivable and cash, together with the purchase price of the stock to be paid the Trust Company, would be over $36,000. The court authorized the receiver to carry out the terms of this agreement, and to deliver to the stockholders, or their agent for the purpose of delivering the same to the Maxim Corporation, the plant of the Seward Company. No provision was made for the payment of the mortgage debt, though presented as one of the claims to the receiver.

The obvious purpose of this plan was to effect a sale of this plant upon the terms of the original offer which Widman procured, by a sale of the stock and a transfer of the plant upon the consideration paid for the stock. How any of the parties in interest could deceive themselves into the belief that in this way the receiver was not selling the plant, and largely on credit, is somewhat hard to understand. But the effect of the transaction, if carried out, was to dispose of the plant for the $25,000 to be paid and the $25,000 mortgage assumed. Widman's efforts found the purchaser for the receiver, and the receiver was satisfied with the terms of this arrangement, and the court does not find it inequitable. Widman is entitled to his reasonable commission.

The court was entirely justified in its finding that this arrangement was for the sole purpose of delivering immediate possession of this plant to the Maxim Corporation, and was regarded by all parties concerned as substantially the equivalent of a sale. We look through the acts of these stockholders and see that they were the acts of the corporation acting by its receiver. *Williams* v. *Clowes*, 75 Conn. 155, 160, 52 Atl. 820; *State* v. *Standard Oil Co.*, 49 Ohio St. 137, 30

N. E. 279; *People* v. *North River Sugar Refining Co.*, 121 N. Y. 582, 24 N. E. 834.

There is no error.

In this opinion the other judges concurred, except THAYER, J., who dissented upon the ground that in his judgment Widman had not earned his commission because there had been in reality no sale of the property.