## MAX ROSENFIELD *vs.* JAMES J. WALL ET UX.

First Judicial District, Hartford, January Term, 1920.
PRENTICE, C. J., WHEELER, BEACH, GAGER and CASE, Js.

A finding that a real-estate broker was the "procuring cause " of a sale, although ordinarily conclusive as one of fact, cannot be sustained if the detailed, subordinate facts require as matter of law a different conclusion.

In the present case it appeared from the finding that the defendant, the owner of the property, employed the plaintiff to find a purchaser; that the plaintiff interested one *B* in the property and that during April and May *B* made several offers, the last of $16,200, all of which the defendant declined; that about June 15th *B* called to her assistance one *P*, also a broker, and through him offered the defendant $16,300 for the property, which he accepted and consummated the sale; and that the defendant paid *P* $200 for his services. *Held* that upon these facts the trial court erred in its conclusion that the plaintiff was the "procuring cause " of the sale, and in rendering judgment for him to recover a commission. (*Two judges dissenting.*)

Submitted on briefs January 6th—decided March 5th, 1920.

ACTION to recover a real-estate broker's commission, brought to and tried by the City Court of Hartford,

*Bullard, J.;* facts found and judgment rendered for the plaintiff for $326, against the defendant James J. Wall, and in favor of Mrs. Wall, from which the former defendant appealed. *Error and new trial ordered.*

On March 5th, 1918, defendant James J. Wall owned the premises known as 68–70 Pliny Street, Hartford, and employed the plaintiff, Max Rosenfield, as his agent to find a purchaser for this property. Plaintiff in April and May, 1918, secured from Mrs. Brody successive offers, the last for $16,200, and submitted these to Wall, who rejected all of them. On June 15th Mrs. Brody called to her assistance a broker named Pierson, and through him offered Wall $16,300 for the property, which offer Wall accepted and the sale was subsequently consummated.

The customary commission for real-estate brokers for the sale of real property is two per centum of the purchase price, in the absence of an agreement for a specific compensation or of a special custom modifying it.

Wall was a real-estate broker and paid Pierson $200 as compensation for his services in the sale of this property. Brokers frequently charge but one half the usual commission when the vendor is a broker.

The trial court found that the plaintiff was the procuring cause of this sale and rendered judgment for plaintiff for $326, being two per cent of the selling price of $16,300.

*Joseph P. Tuttle* and *Henry J. Marks*, for the appellant (defendant James J. Wall).

*Albion B. Wilson*, for the appellee (plaintiff).

WHEELER, J. The essentials of an action such as this, to recover a broker's commission for the sale of

real estate, are the employment of the broker by the owner to sell his real estate upon certain named terms, and the procurement by the broker of a customer willing, ready and able to purchase upon these terms. *Abbott* v. *Lee*, 86 Conn. 392, 85 Atl. 526; *Home Banking & Realty Co.* v. *Baum*, 85 Conn. 383, 82 Atl. 970. The difficulty in supporting the judgment is, that the facts found, upon which the appeal must be determined, do not disclose the cause of action of the complaint, nor indeed any cause of action. One ground of error, and the only one which we shall discuss, is in the holding of the court that the plaintiff was the procuring cause of the sale. Such a finding is to be regarded as one of fact and conclusive, "unless contrary to or unsupported by the subordinate facts, or in conflict with the settled rules of logic and reason, or found in violation of some rule or principle of law." *Seward* v. *Seward & Son Co.*, 91 Conn. 190, 193, 99 Atl. 887.

The conclusion of the trial court that the plaintiff was the procuring cause of this sale, rests on the allegation that he found a purchaser for the property, Mrs. Brody, and gave the defendant Wall the name and address of this purchaser, and subsequently, upward of two months later, Wall sold the property to Mrs. Brody for the purchase price of $16,300.

It is not alleged that this price was a part of the terms of sale for which the plaintiff was employed to sell. It is not alleged that Mrs. Brody ever accepted these terms of sale, or was ever ready, willing and able to buy on these terms. There is no express allegation, and no facts from which it could be inferred that the plaintiff was the procuring cause of the sale. What occurred between the time when the plaintiff found Mrs. Brody and June 20th which induced, or may have induced, Mrs. Brody to make this definite offer, does not

appear. How the defendant came to sell to Mrs. Brody does not appear.

From the mere fact that the plaintiff brought the purchase of this property to the attention of Mrs. Brody and that over two months later she purchased it, does not of itself furnish a sufficient basis from which the inference must necessarily follow that the plaintiff was the procuring cause of the sale. The finding of facts does state that the plaintiff was the procuring cause of the sale, but this is not supported by the subordinate facts, and this conclusion is not consistent with the facts found.

The facts found do not show that the employment of the plaintiff covered the sale of this property upon any stated terms or for any stated price. They do not show that the plaintiff ever accepted any terms or price for which the plaintiff was authorized to effect the sale. They do not show that the plaintiff interested Mrs. Brody to the point that she accepted, or was ready to accept, the terms of sale which the plaintiff was authorized to make. They merely show that during April and May the plaintiff secured from Mrs. Brody successive offers, the last one being $16,200, and submitted all of these offers to Wall, and he rejected them. And that on or about the following June 15th Mrs. Brody called to her assistance another broker and through him offered $16,300 for the property, which offer Wall accepted and subsequently consummated the sale.

The finding of a prospective purchaser is not the only service of the broker. A large part of his effort, perhaps the greater part, is in inducing either the purchaser to meet the seller's terms and price, or the seller to make concessions in the terms to meet the purchaser's wishes. In this case, so far as the finding discloses, Mrs. Brody did not purchase or offer to purchase upon terms satisfactory to the defendant, as the result

of the effort or service of the plaintiff. On the contrary, it is found that another broker, at the instance of the purchaser, induced the defendant to sell the property to Mrs. Brody for $100 more than Mrs. Brody had offered him through the plaintiff. No question of bad faith on the part of the seller, or of Mrs. Brody, arises on the record. The fact that the plaintiff first called Mrs. Brody's attention to this property is not of controlling significance. Who was the procuring cause of the sale is the controlling factor. And it may or may not be the one who first called the purchaser's attention to the purchase of the property. If the prospective purchaser whom a broker introduces to the owner is not able, ready and willing to buy on the owner's terms, or his decision is not reported to the owner, and thereafter another broker procures this same purchaser to accept the owner's terms or to make an offer which the owner accepts, the first broker is not entitled to recover a commission since he cannot be said to be the procuring cause of the sale. The broker's services are not the test, but rather the success of his effort in effecting a sale, or in producing a customer ready, able and willing to buy on the owner's terms.

The employment of a broker without naming a price of sale places it in the power of the owner to reject any offer brought to him. *Cadigan* v. *Crabtree,* 179 Mass. 474, 480, 481, 61 N. E. 37. An owner may, while negotiations remain unsuccessful and before the broker has produced the customer able, ready and willing to buy on the owner's terms, discharge the broker, and if the owner subsequently sell to the customer with whom the broker has unsuccessfully negotiated, the owner will not be liable to the broker for his commissions, provided he be acting in good faith and not seeking to escape payment of the commission by making the sale

himself. *Leonard* v. *Eldridge,* 184 Mass. 594, 595, 69 N. E. 337. "A broker who does not have the exclusive sale of real estate does not become entitled to a commission merely by bringing the property to the attention of the person who finally buys it, but he must also show that his services were the efficient or effective means of bringing about the actual sale. . . . One may have found the customer who otherwise would not have been found, and yet the customer may refuse to conclude the bargain through his agency; and another broker may succeed where the first has failed." *Whitcomb* v. *Bacon,* 170 Mass. 479, 481, 482, 49 N. E. 742. The situation presented in *Earp* v. *Cummins,* 54 Pa. St. 394, 397, is that here, and the Supreme Court of Pennsylvania thus states the rule governing that situation: "But if the services of the broker, whatever they be, fail to accomplish a sale, and several months after the proposed purchaser has decided not to buy, he is induced by other persons to reconsider his resolution, and then makes the purchase as the consequence of such secondary or supervening influence, the broker has no right to a commission." See also *Higgins* v. *Miller,* 109 Ky. 209, 213, 58 S. W. 580; *Carper* v. *Sweet,* 26 Colo. 547, 548, 59 Pac. 45; 9 Corpus Juris, pp. 599, 611, 618; 19 Cyc. 261.

The plaintiff did not have the exclusive sale of this property, and upon the facts found cannot be held to be the procuring cause of the sale. If his bringing of Mrs. Brody to the attention of the owner may be said to be one of the causes leading to the sale, Pierson's services must also be said to be one of the causes. And between these two causes it would be the duty of the trier to say which was the efficient or effective one, which the procuring cause of the sale. The facts so far as they appear, show that the plaintiff was not, but that Pierson was, the procuring cause of the sale.

There is error, the judgment is set aside and a new trial ordered.

In this opinion PRENTICE, C. J., and BEACH, J., concurred.

GAGER, J. (dissenting).    During April and May the plaintiff secured successive offers for the property from Mrs. Brody, not accepted by the defendant. Mrs Brody did not abandon her desire to purchase, but employed a broker, Pierson, to assist her in the purchase.    Through him she offered directly to the defendant $100 more than her last offer made through the plaintiff, which the defendant accepted.    No other person than the plaintiff acted for the defendant, either by employment or as a volunteer, and the plaintiff was not discharged by the defendant.    The case, put baldly, is: Pierson was Mrs. Brody's agent alone, and therefore his acts were hers.    She then comes up $100 more and reports over the head of the plaintiff, defendant's agent, to the defendant, who immediately accepts, and the majority opinion holds that the plaintiff was not the procuring cause of the sale.    If this is so, the case of the broker is hazardous indeed.    He must isolate the intending vendee so that he cannot procure advice in determining how high a price to offer, and so that the intending vendee cannot report directly to the owner.    Suppose Mrs. Brody, after her last offer through the plaintiff, had thought the matter over entirely by herself and then had gone directly to the defendant with a higher offer which was accepted.    Could it be reasonably said that the broker was not the procuring cause?    And does it alter the case that she employs some one to aid her in coming to a conclusion? It seems to me that the opinion from which I dissent either overlooks the decisive fact that Pierson was the

purchaser's agent alone, and in no sense represented the owner, or else holds that reporting the final offer directly to the owner over the broker's head is effective to defeat the claims of the broker. Neither of these alternatives seem to me good law or good business sense.

It is sought to fortify the results reached by two citations which I concede to be good law, but quite irrelevant to the facts of this case. In *Earp* v. *Cummins*, 54 Pa. St. 394, the question was upon the correctness of a charge to the jury that "it is the sole business of the real estate broker to bring buyer and seller together." Of course, this charge was held incorrect. But the facts as stated in the opinion were: "Although the property was advertised by the broker, and the attention of the purchaser was first called to it in that way, yet the evidence was that he declined to purchase, and all negotiations for a sale were abandoned for several months, nor was the purchase finally made until other parties again brought the property to his notice, and then Young, the purchaser, says he bought it, not in consequence of Cummins' advertisement, but by reason of this renewed recommendation by other parties. If anybody could tell how he bought, in consequence of what cause, Young himself was the proper witness, and he swore, ' I was not influenced by Mr. Cummins at all in making this purchase. I did not know him in the transaction, he had nothing to do with the purchase so far as I know.' " Undoubtedly, with the evidence as stated, the charge was erroneous, and the jury should have passed upon the claims of the purchaser that the original negotiations had been abandoned.

In the present case there was no abandonment of negotiations, no declination to purchase for several months, and no calling the attention of the purchaser

after several months by other parties, for Pierson by reason of his employment by Mrs. Brody was in legal effect Mrs. Brody herself.

The other case cited is *Whitcomb* v. *Bacon*, 170 Mass. 479, 49 N. E. 742. This was a case of two independent brokers each acting for the owner of the property. One of them, the plaintiff, had been employed, but not exclusively, and had not effected a sale, and the proposed purchaser had testified that he never made an offer to the plaintiff but had told him he was done with the matter. Later, another broker, learning the property was for sale, first saw the owner and then opened negotiations with the first proposed purchaser and finally effected a sale. Here, again, the broker effecting the sale was in no sense the purchaser's agent.

I think there was no error.

In this opinion CASE, J., concurred.