The plaintiff corporation is engaged in the general real estate business in the City of Hartford. Some time in the spring of 1940, the defendant, Miriam Sherman, consulted with Moses J. Neiditz, president of the plaintiff corporation, relative to the sale of her property on Ridgefield Street. As a result thereof, the plaintiff corporation placed a "For Sale" sign on the premises and also advertised the same in a daily newspaper. Some time in the spring or early summer of 1940, the said Moses J. Neiditz called upon the defendant, Edith Goldberg, who was then Edith Cartin, and discussed with her some matters of insurance. At that time or shortly thereafter, the said Moses J. Neiditz made an appointment with Mrs. Goldberg, then Mrs. Cartin, to show her the Sherman premises on Ridgefield Street. On the same day, Mr. Neiditz also showed Mrs. Cartin some other properties. Arriving at the Sherman property on Ridgefield Street, it was found that the owner, Mrs. Sherman, was not at home and entrance could not be obtained to the house so it was viewed from the outside. Owing to the inability to get into the house on this day, the showing to Mrs. Cartin was, of course, incomplete. The testimony is at variance as to whether or not Mr. Neiditz and Mrs. Cartin had had a conference over the telephone on the next day relating to this property. However, it is undisputed that Mr. Neiditz never did take Mrs. Cartin to see this property at any subsequent date, claiming that she had told him that the property was too large and that she could not be interested, particularly *Page 28 
at that time. Mr. Neiditz claims that he had notified the defendant Sherman by telephone the day after taking Mrs. Cartin to the premises that he had an interested customer and claims that he told Mrs. Sherman the name of the interested customer. Mrs. Sherman denies that Mr. Neiditz had ever told her of Mrs. Cartin as a customer. However, it is undisputed that Mr. Neiditz never did bring these two people together by way of personal introduction.
Some time in the early part of September, 1940, a real estate agent by the name of Samuel Karp interested Mrs. Cartin in the Sherman property on Ridgefield Street. The situation in Mrs. Cartin's household had changed from what it was in the early spring and she was then in the market for a larger home than the one in which she was then living. Mr. Karp took Mrs. Cartin to the Sherman home on Ridge field Street and introduced her to Mrs. Sherman. Negotiations were entered into relating to purchase price, mortgages, etc., these negotiations necessitating trips to New Haven for the purpose of straightening out details in connection with the first mortgage. There was some dickering between the owner, the real estate agent and Mrs. Cartin as to purchase price, which finally culminated in an agreement or bond for deed dated September 19, 1940, whereby Mrs. Cartin agreed to purchase this property for $13,500 on terms particularly set forth in said bond for deed which was introduced and marked defendant's Exhibit 2. The terms of this bond for deed indicate that there were several matters relating to adjustments, particularly in connection with the first mortgage held by the Home Owners' Loan Corporation, which were necessary before a complete agreement could be reached between seller and purchaser. The property was sold on or about October 14th to the defendant Cartin pursuant to the terms of said bond for deed.
Prior to the signing of the bond for deed dated September 19, 1940, the defendant Sherman had no knowledge of any real estate agent connected with this transaction with the exception of Samuel Karp, who had brought Mrs. Cartin to her as a purchaser. The real estate agent, Samuel Karp, had no knowledge that Mr. Neiditz had ever showed the property to Mrs. Cartin.
After the property was sold, the full real estate commission *Page 29 
was paid by the seller, Mrs. Sherman, to the real estate agent, Samuel Karp. After Mr. Neiditz became aware of this sale, he notified the defendant Sherman that he would demand a commission, and when the sale was finally put through at the office of the attorneys representing the parties, steps were taken by the attorneys in connection with the payment of the commission which appeared to have been regular and in accordance with good practice.
The mere fact that the plaintiff brought the purchase of this property to the attention of the defendant, Mrs. Cartin, and that several months later she purchased the property does not, of itself, furnish a sufficient basis from which the inference must necessarily follow that the plaintiff was the procuring cause of the sale. The finding of a prospective purchaser is not the only service of the broker. A large part of his effort, perhaps the greater part, is in inducing either the purchaser to meet the seller's terms and price or the seller to make concessions in the terms to meet the purchaser's wishes. Who was the procuring cause of the sale is the controlling factor and not the fact that the plaintiff first called the purchaser's attention to the property. Rosenfield vs. Wall,94 Conn. 418, 421, 422.
The plaintiff did not have the exclusive sale of the defendant Sherman's real estate. If the services of the broker fail to accomplish a sale and several months after the proposed purchaser has decided not to buy, he is induced by other persons to reconsider his resolution and then makes the purchase as a consequence of such secondary or supervening influence, the broker has no right to a commission. Rosenfield vs. Wall,supra, p. 423, and the cases cited therein.
The Supreme Court stated in the case of Murphy vs. Linskey,94 Conn. 475, 478: "Where two or more brokers without exclusive authority to sell, play some part in a transaction of sale, each contributing something to bring about the resulting sale, each is not entitled to a commission or to share in the commission paid. Some one of them is entitled to it, and he the one who deserves to be regarded as the procuring cause of the sale by reason of his efforts having been an efficient proximate cause in its accomplishment, or, as otherwise expressed, the `predominating efficient cause' of such an accomplishment." The services of the broker are not the *Page 30 
test, but rather the success of his efforts in effecting a sale.Westbrook vs. Times-Star Co., 122 Conn. 473, 480. The question for the determination of the court in this case is whether the plaintiff was the predominant efficient procuring cause in bringing the defendant Sherman and her purchaser, Mrs. Cartin, together and causing the sale. Housatonic ValleyInsurance Agency, Inc. vs. Klipstein, 125 Conn. 274.
The plaintiff informed the defendant Cartin that the defendant Sherman's house was for sale, this in the spring or early summer of 1940. On the day Mr. Neiditz and Mrs. Cartin visited the premises, there was no adequate showing of the premises to the extent that any proposed purchaser would be in a position to determine whether or not he would be interested in purchasing. The plaintiff failed to follow up his lead for a period of several months, thereby giving justification to a belief on the part of the customer that he was no longer interested in making the sale.
The plaintiff in this action was not the predominant efficient procuring cause of the sale of this property from Mrs. Sherman to Mrs. Cartin.
There was nothing in the evidence in the trial of this case to sustain the allegations set forth in the second count of the plaintiff's complaint.
 All of the issues are found for the defendants and judgment may be entered for the defendants and for the defendants to recover their costs.