ELIZABETH M. ROCHE ET AL. *v.* WILLIAM F. CURTIN
ET AL.

MALTBIE, C. J., BROWN, JENNINGS, DICKENSON and WYNNE, Js.

Argued April 6—decided May 17, 1944.

*William M. Harney,* for the appellants (plaintiffs).

*Robert L. Halloran,* for the appellees (defendants).

DICKENSON, J.   The plaintiffs, real estate brokers, brought the defendant owners and a customer together upon a price which the owners had agreed with the brokers to take, and the customers had agreed with them to pay, for the owner's property, but the sale was not consummated because of the failure of the plaintiffs to render financial assistance which they had agreed to give the customer to enable him to purchase the property.   Some months later the customer himself procured the necessary funds and purchased the property.   The plaintiffs claim to be the procuring cause of the sale.   With such corrections of the finding

as we find the plaintiffs entitled to, the material facts are as follows:

The plaintiffs were real estate brokers in partnership as to this matter. The defendants owned adjoining properties which the defendant William F. Curtin was the authorized agent to sell. On May 12, 1941, Curtin authorized the plaintiff Mrs. Roche to act as a broker in the sale of the properties at a price of $62,000, agreeing to pay her, if a sale was made, a commission of $3000. The properties had been previously listed with other real estate brokers. None of the brokers had the exclusive agency to sell. At the time the property was listed with Mrs. Roche, Curtin gave her the data concerning the mortgages and income. Clement Kalkowski had been a tenant of the property for many years. He had made up his mind to purchase it if he could finance the purchase and had had many discussions with the owners and with other brokers with whom it was listed concerning its purchase, prior to its listing with Mrs. Roche, but not at the price given Mrs. Roche. The plaintiffs Roche and Zinnman interviewed Kalkowski, informed him that the property could be bought for $62,000 and offered to aid him in raising money to purchase it at that price. They made unsuccessful attempts to procure a larger first mortgage on the property and Kalkowski himself attempted to raise the money. The plaintiffs Roche and Zinnman finally agreed that they would personally loan him money on a second mortgage to enable him to purchase the property for $62,000. A meeting was held on August 12, 1941, between William Curtin, representing the defendants, the plaintiffs Roche and Zinnman, and Kalkowski, to arrange for a contract of sale to Kalkowski. At this meeting the plaintiff Mrs. Roche stated that she had been advised by a banker not to make a loan on a

second mortgage and had decided not to. Kalkowski thereupon called her and Zinnman "double-crossers" and left the meeting. No contract was made and the plaintiffs had no further contact with Kalkowski, although they continued their attempts to procure other purchasers. Thereafter, Kalkowski made arrangements to finance the purchase himself with a loan from the Mutual Loan Bank of New Britain. Learning of this, Mrs. Roche claimed a commission and Kalkowski refused to proceed with the transaction on the ground that she was not entitled to it. Later, on November 21, 1941, the defendants entered into a written agreement with Edward Kalkowski, Clement Kalkowski's representative, for the sale of the property for $59,000 on or before January 2, 1942. The plaintiff Riley filed a caveat on the property claiming full commission for the sale. The property was conveyed by the defendants to Clement Kalkowski's two sons as his nominees on January 3, 1943. The bank refused to make the loan required to perfect the sale without protection against the claim in the caveat, whereupon it was agreed that William Curtin would loan $3000 to the Kalkowskis which was to be deposited with the bank to save it harmless from brokers' commissions.

The trial court further found that the plaintiffs were not the procuring cause of the purchase of the property by Kalkowski. Such a finding "is to be regarded as one of fact and conclusive, 'unless contrary to or unsupported by the subordinate facts, or in conflict with the settled rules of logic and reason, or found in violation of some rule or principle of law.'" *Housatonic Valley Ins. Agency, Inc.* v. *Klipstein,* 125 Conn. 274, 278, 5 Atl. (2d) 16; *Rosenfield* v. *Wall,* 94 Conn. 418, 420, 109 Atl. 409; *Seward* v. *Seward & Son Co.,* 91 Conn. 190, 193, 99 Atl. 887. The question is

whether in the light of this principle there was error in the conclusion of the trial court.

To entitle a real estate broker to a commission for the sale of his principal's property he must show that he procured a customer ready, willing and able to purchase upon terms prescribed or accepted by the owner. *Murphy* v. *Linskey,* 94 Conn. 475, 477, 109 Atl. 412. When the plaintiffs presented Kalkowski to the defendants as a customer, he was not able to contract for the purchase of their property because the plaintiffs refused to loan him the money they had agreed to. Their claim, however, is that even so they had brought the parties together on a price that Kalkowski subsequently paid and were thus the procuring cause of the sale. This is not a case where, as in the *Housatonic Valley Ins. Agency, Inc.* v. *Klipstein,* supra, and *Hoadley* v. *Savings Bank of Danbury,* 71 Conn. 599, 42 Atl. 667, the broker was the first to call the customer's attention to the property. Kalkowski had long been interested in the purchase of the property. The single result of the plaintiffs' efforts was to get the owner to fix a total price which the customer agreed with the plaintiffs to pay. The consent of the customer to pay this price, however, was conditioned upon the plaintiffs' agreement to loan him part of the necessary cash, which they failed to do. It is the claim of the plaintiffs, however, that the trial court confused their legal relations with Kalkowski with those they had with the defendants; that while their relations with Kalkowski had terminated, those with the defendants had not; that when Kalkowski finally purchased the property it was as a result of their efforts in fixing the price and that the defendants were not concerned with how Kalkowski raised the money if they received their price, as they later did.

The trial court had before it the simple question of

fact whether the efforts of the plaintiffs were the predominantly effective cause of the later sale. *Housatonic Valley Ins. Agency, Inc.* v. *Klipstein*, supra, 278. As to this, there were the facts that Kalkowski contracted to buy the property for $59,000 instead of $62,000, although he later was required to deposit $3000 to save the bank harmless from a possible judgment for a broker's commission; that he had refused to purchase on an earlier occasion if the plaintiffs were to be paid a commission, an indication that he was no longer the plaintiffs' customer; and that through his own efforts he had succeeded in raising sufficient funds to make the purchase, while the plaintiffs, having promised to do so to interest him in the purchase, had failed. We may not say that the trial court's conclusion that the plaintiffs' efforts were not the procuring cause of the sale was so contrary to the subordinate facts or in violation of principles of law or logic as to constitute reversible error.

There is but one other assignment of error that we deem it necessary to consider, a ruling upon evidence. Monroe Gordon was produced as a witness by the defendants and testified he had seen William Curtin and Kalkowski each about fifty times from February to November, 1941, and Gordon was asked if he had had discussions with Curtin about the defendants' property. The question was objected to on the ground of irrelevancy. The court stated it assumed Gordon was representing Kalkowski. Plaintiffs' counsel replied that it did not so appear. The court then said, "Perhaps he will develop that." Counsel for the defendants was then allowed, over plaintiffs' objections, to elicit testimony that Kalkowski talked with Gordon about the purchase of the property, that he had made an offer to Curtin for Kalkowski to buy part of it, and as to further conversations Gordon had with Cur-

tin about the purchase of the property indicating efforts the former had made in behalf of Kalkowski to effect the purchase. The questions were material and relevant if Gordon was Kalkowski's representative. Included in the finding in connection with this ruling is a statement of the trial court that "It also appeared later in the testimony of Clement Kalkowski that he, Kalkowski, had retained Monroe Gordon as his lawyer and agent to act for him with reference to the purchase of the property." This statement is not attacked and so is conclusive. See *State* v. *Hayes,* 127 Conn. 543, 595, 18 Atl. (2d) 895.

There is no error.

In this opinion the other judges concurred.