JOHN PENTIN v. JOHN GONSOWSKI ET AL.

BROWN, C. J., JENNINGS, BALDWIN, INGLIS and O'SULLIVAN, Js.

Argued May 3—decided June 19, 1951

*Philo C. Calhoun,* with whom, on the brief, was *Leonard McMahon,* for the appellant (plaintiff).

*H. LeRoy Jackson,* for the appellees (defendants).

BROWN, C. J. The plaintiff sued the defendants for a broker's commission for the sale of real estate in Danbury. The court rendered judgment for the defendants and the plaintiff has appealed.

The controlling facts found, which are not subject to material correction, may be thus summarized: On August 22, 1947, the defendants, husband and wife, had for years owned a farm in Danbury. It consisted of about 110 acres; exactly how much acreage they owned did not appear. The house and barns were situated near a highway. In 1937, the defendants had listed the farm for sale with Carl Hibbard, a real estate broker. In 1947, they still desired to sell a large part of it but to retain the portion whereon the buildings were located. In 1946, Paul Kovacs, who was familiar with the property, requested the plaintiff, a real estate broker, to ascertain whether it could be bought. The plaintiff obtained from the named defendant, whom we shall call the defendant, an oral listing for sale of so much of the property as contained about 100 acres, but expressly providing that the balance, described as containing about 10 acres, on which stood the house and barns, was to be retained by the owner. The defendant showed both parts to the plaintiff. However, the boundaries of the land to be retained, though referred to generally, were not exactly specified. No map of

the premises had been made at that time. The listing was at $22,000 upon a 10 per cent commission. Several other brokers also had the general listing, as the plaintiff knew. On August 18, 1947, the plaintiff showed the property to Kovacs, who offered $15,000 for it. That day the defendant told the plaintiff he had reduced the asking price to $20,000, but he declined the $15,000 offer. When told of this on August 19, Kovacs refused to increase his offer to $17,000, as suggested by the plaintiff, but did on August 20 repeat his offer of $15,000.

That evening Kovacs by chance met the real estate broker Carl Hibbard, who in 1947 had talked with him about the property. Kovacs told him he was interested in it. When he disclosed the asking price, Hibbard stated that he would find out if he could get it for Kovacs for $16,000. Hibbard was very familiar with the property, since he had lived on the place for three years, had known the defendant for many years both in a business way and as a friend, and had visited him almost weekly. On the morning of August 21, Hibbard called at the farm and told the defendant that he had a prospect who was interested in paying $16,000 for the premises. This offer the defendant refused, but he did drop his price from $20,000 to $17,500. When Hibbard stood firm at $16,000, the defendant finally told him that, if he could persuade his prospect to allow the defendant to retain an additional piece of about four acres of flat land to the rear of the original piece excepted, the defendant would accept $16,000, provided Hibbard would take $1000 in full as his commission. To this Hibbard agreed, although his usual commission for selling such property was 10 per cent. The defendant stated that he could make a living by growing things on the four-acre tract, which was served by a spring. When Hibbard reported to Kovacs, the latter at first refused

to go above $15,000 but was finally prevailed upon to buy at $16,000, and he gave Hibbard $1000 as a binder. The defendant refused to accept this deposit or to sign a contract until he had met the buyer and explained the boundaries to him. After Hibbard had introduced Kovacs to the defendant, the three walked over the land together and the defendant pointed out the boundaries of the land to be retained, so that all understood what the boundaries were of the original, as well as of the additional, piece to be retained. Pursuant to Kovacs' suggestion, a survey and map were made which delineated the original piece plus the additional piece as constituting the land to be excepted. Both the tracts so shown, totaling 8.79 acres, were expressly excepted in the deed of the property which was subsequently given by the defendants to Kovacs, but all the rest of the farm was included. The defendants paid Hibbard his $1000 commission. The contract between the defendants and Kovacs was executed August 21, and the same day both notified the plaintiff thereof. Thereupon the plaintiff demanded his commission of the defendant, who refused to pay it on the ground that the plaintiff had not sold the property.

The property conveyed was the same as that listed with the plaintiff for sale except for the additional parcel retained by the defendants. There was no bad faith on the part of Kovacs, Hibbard, or the defendant. At no time did the plaintiff obtain an offer of more than $15,000 from Kovacs. Hibbard prevailed upon Kovacs to increase his offer to $16,000 even though he was to receive less land than was contemplated when he made the offer of $15,000 to the plaintiff. Up to the time of the execution of Kovacs' contract with the defendants, his customer-broker relationship with the plaintiff had not been expressly broken off, nor had Kovacs ceased to hold the matter of the purchase under consideration.

As we have indicated, the court was fully justified upon the evidence in finding the above facts. In his brief, however, the plaintiff further argues that those paragraphs of the finding to the effect that the land finally sold to Kovacs by the defendants was less in quantity than the land originally listed with the plaintiff, concerning which he, the defendants and Kovacs had been negotiating, are unwarranted. The contention is that inasmuch as, at the listing, the single tract to be retained was referred to as containing about 10 acres, the fact that the actual area of the two tracts retained upon the sale as made totaled but 8.79 acres negatives the possibility that the retention of the additional four-acre tract could have reduced the acreage actually conveyed below that which had been listed with the plaintiff. It is to be noted, however, that what was said by the defendant at the time of the listing was at best predicated upon a rough estimate without the benefit of either the survey or the plan which became available by the time of the sale. This aside, the explicit finding that parcel 1 on the plan was what the defendant in dealing with the plaintiff had originally listed to be retained, and that parcel 2 was the additional four-acre piece which in fact was also retained when the sale was made, is supported almost verbatim by the testimony of the defendant, which the court accepted as the truth. Under the circumstances, whatever the apparent inconsistencies in the finding, the plaintiff's contention cannot prevail.

The court further concluded upon the above facts that the plaintiff did not produce a customer ready, willing and able to buy on the terms of the defendant, and that the plaintiff was not the procuring or predominating efficient cause of the sale, but that Hibbard was, and the court therefore rendered judgment for the defendants. The plaintiff's primary contention is that

since his relation of broker with his customer Kovacs was never expressly broken off before Kovacs and the defendants executed their contract, and since at no time prior to the execution of that contract had the subject of the purchase ceased to be under consideration by Kovacs, it follows that the plaintiff as a matter of law was the procuring cause of the sale and that therefore the court's conclusions are unwarranted and its judgment erroneous. Whether this is so is the question decisive of the appeal.

A broker in order to earn his commission upon a general listing of real estate for sale must produce a customer ready, willing and able to purchase on the terms prescribed or accepted by the owner. *Murphy* v. *Linskey*, 94 Conn. 475, 477, 109 A. 412; *Finch* v. *Donella*, 136 Conn. 621, 626, 73 A. 2d 336; *Dyas* v. *Akston*, 137 Conn. 311, 313, 77 A. 2d 79. A finding by the court that a broker was the procuring cause of a sale is one of fact and conclusive, "unless contrary to or unsupported by the subordinate facts, or in conflict with the settled rules of logic and reason, or found in violation of some rule or principle of law." *Seward* v. *Seward & Son Co.*, 91 Conn. 190, 193, 99 A. 887; *Rosenfield* v. *Wall*, 94 Conn. 418, 420, 109 A. 409; *Roche* v. *Curtin*, 131 Conn. 66, 68, 37 A. 2d 805. In the instant case, the plaintiff had been unable to lessen the $2500 gap between the $17,500 asked and the $15,000 offered, while Hibbard, with the advantage of his intimate knowledge of the property and friendship with the defendants, by successfully promoting the sale of a reduced acreage at a lower commission not only succeeded in persuading them to sell for $16,000 instead of $17,500 but also induced Kovacs to pay the additional $1000 to meet this price, notwithstanding the reduced acreage. It is therefore manifest that the court's conclusion that Hibbard was, and the plaintiff was not,

the procuring cause of the sale is supported by the subordinate facts and that it is not in conflict with the settled rules of logic and reason. Whether it violates "some rule or principle of law" is the further question.

In support of his claim that it does, the plaintiff relies upon language in *Fisher* v. *Hanson*, 99 Conn. 703, 706, 122 A. 906. In that case, the plaintiff broker had produced the purchaser, but the defendant owner by subsequently dealing directly with the buyer accomplished the sale through a reduction of $500 in the price. Upon appeal for claimed error in the charge, this court held that the instruction to the jury that, if the fresh "essential impetus which brought about the sale was furnished by another and not by the plaintiff, then he cannot recover," did not give adequate guidance to the jury, since under it they might have found that the defendant's reduction in price of itself supplied the "essential impetus" which brought about the sale. On this ground a new trial was ordered. As a proper charge upon the particular facts of that case, this rule was stated: "It is the law that if a broker directly or indirectly has brought a prospective customer procured by him in contact with the owner, and the owner within a short time personally or by another agent effects a sale at a reduced price to such customer of the broker, and the relation of the purchasers as customers of the broker had not been expressly broken off, or the matter of the purchase ceased to be held under consideration by the purchasers before they entered into negotiations with the owners or another agent, then the purchasers are still the customers of the broker, and he is the procuring cause of the sale." As is manifest, the opinion indicates that the broker who first interests the customer in the purchase of the property is as a matter of law the procuring cause of the sale unless either the relation of the purchaser as a customer had been ex-

pressly broken off or the matter of the purchase had ceased to be held in consideration by the purchaser before he entered into negotiations through another broker. In so far as the language quoted suggests that in all cases, including those where, as here, no bad faith is involved, this statement holds true, it is overruled.

We have stated as follows the rule which applies to the factual situation in the present case and is determinative of the question under consideration: "Where two or more brokers without exclusive authority to sell, play some part in a transaction of sale, each contributing something to bring about the resulting sale, each is not entitled to a commission or to share in the commission paid. Some one of them is entitled to it, and he the one who deserves to be regarded as the procuring cause of the sale by reason of his efforts having been an efficient proximate cause in its accomplishment, or, as otherwise expressed, the 'predominating efficient cause' of such accomplishment." *Murphy* v. *Linskey,* 94 Conn. 475, 478, 109 A. 412. As is further pointed out in *Rosenfield* v. *Wall,* 94 Conn. 418, 421, 109 A. 409, the finding of a prospective customer is but part of the services of a broker and does not necessarily entitle him to the commission. Inducing the customer and the seller to agree to the terms of purchase may well be the greater part. The broker entitled to the commission is the one who was the procuring cause of the sale. Who that is, "is the controlling factor. And it may or may not be the one who first called the purchaser's attention to the purchase of the property. . . . The broker's services are not the test, but rather the success of his effort in effecting a sale, or in producing a customer ready, able and willing to buy on the owner's terms." Id., 422. Whether what the plaintiff did or whether what was subsequently done by Hibbard was the efficient or effective producing cause of the sale was the

controlling question of fact for the trial court's determination. *Housatonic Valley Ins. Agency, Inc.* v. *Klipstein,* 125 Conn. 274, 278, 5 A. 2d 16; *Neville* v. *Yaknunas,* 132 Conn. 627, 630, 46 A. 2d 342. These principles have been repeatedly reiterated by this court. *Bridgeport Land & Title Co.* v. *Langdon,* 101 Conn. 553, 555, 126 A. 683; *Roche* v. *Curtin,* 131 Conn. 66, 68, 37 A. 2d 805; *Sachs* v. *Danbury National Bank,* 132 Conn. 424, 425, 45 A. 2d 123. None of the other cases principally relied upon by the plaintiff constitute authority to the contrary, because they deal with different states of fact. For example, in *Butler* v. *Ouwelant,* 90 Conn. 434, 97 A. 310, there was bad faith upon the part of the defendant owner and the intervening agent. In both *DeToro* v. *Cannata,* 114 Conn. 712, 157 A. 270, and *Ranney* v. *Rock,* 135 Conn. 479, 66 A. 2d 111, there was no intervening broker who could have been the procuring cause. In the former, the question was held to be purely one of fact, and in the latter the acts were such that there could reasonably have been but the one conclusion — that the activity of the plaintiff was the procuring cause. The trial court violated no rule or principle of law in reaching its conclusions.

The final claim of the plaintiff is that the defendant was guilty of bad faith as a matter of law. This, too, constituted a question of fact for the trial court.

There is no error.

In this opinion the other judges concurred.