DEWEY KANE *v.* AIMEL BRUNNEAU

INGLIS, C. J., BALDWIN, O'SULLIVAN, DALY and ROBERTS, JS.

Argued April 8—decided May 4, 1954

*William K. Lawlor,* for the appellant (plaintiff).

*William W. Gager,* for the appellee (defendant).

INGLIS, C. J. This is an action for a broker's commission on the sale of real estate formerly owned by the defendant. The court rendered judgment for the defendant and from that judgment the plaintiff has appealed.

The finding may be summarized as follows: In the early part of 1951 the defendant owned an apartment house, known as the Gloria Apartments, in Waterbury. In the previous year he had placed the property on the market at $125,000, and this fact was generally known by real estate brokers. In the latter part of March or the first week of April, 1951, the plaintiff telephoned the defendant, saying that he, the plaintiff, was in the real estate business, and inquired whether the Gloria Apartments were for sale. He was advised that they were and that the asking price was $115,000. When he requested further details, he was told that he would have to see the defendant personally. The defendant did not engage the plaintiff to act as broker and heard nothing more from him until after the sale was consummated.

Shortly after this telephone conversation, the plaintiff interviewed a Dr. Haddad of Ansonia, gave him some details about the Gloria Apartments and stated that he thought they could be bought for $115,000. Dr. Haddad drove by the property but did not go in. He then telephoned the defendant and asked the price of the property. When he was told that the price was $115,000, he thought it entirely out of line and dropped the whole matter.

Early in June, 1951, in connection with an unsuccessful attempt to sell the property to a Mr. Duber, the defendant came into contact with Attorney Graicerstein of Waterbury. Graicerstein considered buying the property, looked it over and obtained detailed figures from the defendant, who said that he was hard pressed financially and would take a net price, after commissions and expenses, of $93,500. Graicerstein discussed the possibility of his purchasing the property with Charles Rosengarten, a realtor of Waterbury. On June 19, Rosengarten telephoned Graicerstein that he had a possible customer for the property, a Dr. Haddad of Ansonia. Thereupon Graicerstein checked with the defendant and was again told that the minimum net price would have to be $93,500.

Rosengarten and Graicerstein called on Dr. Haddad and, following a discussion, suggested a figure of $98,500, with the statement that any further reduction would have to come out of the broker's commission. After Graicerstein had talked with the defendant over the telephone and had again ascertained that the net rock-bottom price would have to be $93,500, Rosengarten accepted from Dr. Haddad a deposit of $2000 on the property at a price of $96,500, subject to the owner's approval. On the following day, June 20, the defendant executed a formal con-

tract for the sale of the property to Dr. Haddad at $96,500, with the understanding with Rosengarten and Graicerstein that the broker's and attorney's fees and all expenses of sale would be $3500, although the customary realtor's fee alone would have been 5 per cent of the purchase price. The defendant would not have entered into a contract to sell the property for $96,500 if he had been liable for a full brokerage commission of 5 per cent. At the final closing, the price was reduced to $96,000 because of a dispute as to the cost of heating the apartments.

After the contract had been executed and before the actual closing, the plaintiff telephoned the defendant to ask whether the property had been sold and, if so, to whom. This was the first communication between the parties after the initial call. In the interval, the plaintiff had made no effort to persuade the defendant to lower his price or to persuade Dr. Haddad to make an offer.

On the foregoing facts, the court concluded that after the plaintiff visited Dr. Haddad the latter had no interest in the apartments, that his interest was rekindled by the efforts of Rosengarten and Graicerstein, and that the plaintiff was not the procuring cause of the sale to Dr. Haddad.

The plaintiff has made a wholesale attack on the finding of subordinate facts. The finding is amply supported by the evidence. The purported facts set forth in the draft finding which the plaintiff seeks to have added either are covered in the finding or are immaterial or not undisputed. The sole question left in the case, therefore, is whether the court's conclusion that the plaintiff was not the producing cause of the sale is one which might logically be drawn from the subordinate facts.

Ordinarily, to entitle a broker to a commission in a case in which he does not have an exclusive agency, his efforts must have been the predominating producing cause of the sale. *Pentin* v. *Gonsowski,* 138 Conn. 43, 50, 82 A.2d 157; *Murphy* v. *Linskey,* 94 Conn. 475, 478, 109 A. 412. Whether his efforts were such a producing cause is a question of fact, and the trial court's conclusion on the subject must stand unless it is contrary to or unsupported by the subordinate facts or is in conflict with logic and reason or is found in violation of some rule of law. *Roche* v. *Curtin,* 131 Conn. 66, 68, 37 A.2d 805; *Rosenfield* v. *Wall,* 94 Conn. 418, 420, 109 A. 409; *Seward* v. *M. Seward & Son Co.,* 91 Conn. 190, 193, 99 A. 887.

In the present case, there are two crucial facts bearing on the question whether it was the plaintiff who procured the sale to Dr. Haddad. The first is that when Dr. Haddad concluded, in early April, that the price asked for the property was out of line, he dropped the entire matter. At this point the plaintiff's efforts to sell the property to Dr. Haddad had spent themselves. Dr. Haddad's interest in the property had ended and no sale had been procured. The second fact is that the sale was actually brought about by the negotiations conducted by Rosengarten and Graicerstein and, in particular, by their willingness to reduce Rosengarten's commission. These circumstances warrant the trial court's conclusion that the plaintiff was not the procuring cause of the sale. *Neville* v. *Yaknunas,* 132 Conn. 627, 630, 46 A.2d 342; *Sachs* v. *Danbury National Bank,* 132 Conn. 424, 425, 45 A.2d 123; *Scofield* v. *Second Universalist Society,* 102 Conn. 156, 161, 128 A. 290.

There is no error.

In this opinion the other judges concurred.