WILLIAM PITT *v.* GEORGE E. KENT, JR., EXECUTOR (ESTATE OF GEORGE E. KENT), ET AL.

BALDWIN, C. J., KING, MURPHY, SHEA and ALCORN, Js.

Argued February 7—decided March 16, 1962

*Robert B. Seidman,* with whom was *Sidney Vogel,* for the appellant (defendant Meany).

*John D. Hertz,* with whom was *T. Ward Cleary,* for the appellee (plaintiff).

BALDWIN, C. J. The plaintiff, a real estate broker, sued to recover one-half of a commission paid to the defendant George Meany, another real estate broker, by the named defendant for procuring the sale of real estate. By stipulation, the action was withdrawn as to the named defendant. Hereinafter the defendant Meany will be referred to as the defendant. He has appealed, from a judgment rendered for the plaintiff.

The defendant seeks additions to the finding. The facts which he wants incorporated are not admitted or undisputed and for the most part consist of inferences which the trial court was not required to draw. No addition can be made. Maltbie, Conn. App. Proc. §§ 155, 159.

The finding can be stated in summary as follows: In February, 1956, the plaintiff became associated with the defendant in the business of selling real estate. In May, 1956, the defendant learned that Blitz and Price, contractors, builders and developers, were interested in certain land in Wilton comprising part of the Kent estate. After discussing the property with Paul Blitz of Blitz and Price, the defendant began negotiations with the attorney for the Kent estate. The defendant made an offer of $200,000, with $5000 as a down payment. After

further negotiations, the attorney decided not to accept the offer. Blitz and Price were concerned primarily with the terms of payment. The defendant, however, continued the negotiations from May through December. Shortly after Labor Day, 1956, the plaintiff and the defendant terminated their association. They entered into a written agreement that in the event the defendant effectuated a sale of the Kent property to Blitz and Price the plaintiff would be recognized as a cobroker.

Max Lepofsky, an attorney in Norwalk, had for many years represented Blitz and Price and various corporations through which they conducted their business. Lepofsky also had clients who deposited substantial sums of money with him to finance real estate transactions which might prove profitable. When it appeared that it was impossible for Blitz and Price to meet the financial arrangement demanded by the Kent estate, the defendant sought Lepofsky's assistance. Blitz and Price, prior to the commencement of final negotiations for the Kent property, had negotiated for other land with the aid of Lepofsky and of a group of his clients acting as a syndicate. One transaction, called the Kenneil purchase, was consummated, after negotiations by Blitz and Price, by a syndicate's taking title, the land to be conveyed in parcels to Blitz and Price beginning six months and fifteen days later. The defendant knew that Lepofsky could arrange the financing of the purchase of the Kent property for Blitz and Price because of previous negotiations he had had in a similar transaction known as the Senior deal. Lepofsky, after the defendant had discussed the Kent property with him in December, 1956, immediately arranged a syndicate to purchase it in substantially the same way that the Kenneil

purchase had been handled. Lepofsky told the syndicate that Blitz and Price were ready, willing and able to buy the Kent property and to begin its development six months and fifteen days after title had been taken by the syndicate. Lepofsky then informed the defendant how to prepare the contracts. Contracts were prepared for the purchase of the property by the syndicate in January, 1957, for $200,000, and for its purchase by Blitz and Price from the syndicate for $288,000. Negotiations for the two sales were carried on simultaneously, with Lepofsky representing both the syndicate and Blitz and Price. The defendant knew that the members of the syndicate were not builders and developers, and he believed that if the sale was made to the syndicate Blitz and Price might be the developers. The syndicate took title, with an agreement for a resale at a higher price to Blitz and Price more than six months later. This course was chosen, in preference to a direct purchase of the property by Blitz and Price from the Kent estate with funds loaned by the syndicate on a conventional mortgage, in order that the syndicate's profit could be claimed to be subject to the long-term capital gains income tax provision. After the expiration of six months and fifteen days, the syndicate commenced to convey lots to Blitz and Price through their wholly owned corporation, Parting-Brooks Homes. The defendant received from the representatives of the Kent estate the customary 5 percent commission.

The court concluded that the defendant had earned his commission by reason of his efforts in handling the entire transaction, i.e., the sale to the syndicate and from the syndicate to Blitz and Price; that the purchase by the syndicate was a means of financing the purchase by Blitz and Price; and that

the transaction as a whole came within the agreement between the plaintiff and the defendant to share the commission.

In arguing that the plaintiff is not entitled to share in the commission, the defendant uses by way of analogy the situation where two brokers have each played a part in the sale of a single piece of real estate. He correctly points out that both are not entitled to share the commission but that he who was by reason of his efforts the predominating, efficient cause of the sale gets the commission. *Murphy* v. *Linskey,* 94 Conn. 475, 478, 109 A. 412. If a broker secures a prospective purchaser who is not able, ready and willing to purchase on the vendor's terms, and thereafter another broker succeeds in inducing the same prospect to accept the vendor's terms or to make an offer which the vendor accepts, the first broker is not entitled to a commission because he cannot be said to be the procuring cause of the sale. *Rosenfield* v. *Wall,* 94 Conn. 418, 422, 109 A. 409; *Bridgeport Land & Title Co.* v. *Langdon,* 101 Conn. 553, 554, 126 A. 683; *Pentin* v. *Gonsowski,* 138 Conn. 43, 48, 82 A.2d 157. The analogy thus suggested might be apt if the question here was whether the defendant's efforts prior to the termination of the association between the plaintiff and the defendant were the procuring cause of the sale. But the agreement made at the time of the termination of the association does not make the plaintiff's right to share in the commission dependent on whether the sale was procured during the association. The agreement was that if the defendant effectuated a sale of the Kent property to Blitz and Price, the commission would be shared. Thus, the decisive issue is whether the defendant was the procuring cause of a sale to Blitz and Price. If he was, the

plaintiff qualified as a cobroker under his agreement with the defendant. Whether a broker is the procuring cause of a sale is essentially a question of fact, and the court's conclusion must stand unless it is contrary to or unsupported by the facts, or is in conflict with logic or reason, or violates the applicable rules of law. *Metz* v. *Hvass Construction Co.,* 144 Conn. 535, 536, 135 A.2d 363; *Kane* v. *Brunneau,* 141 Conn. 242, 246, 105 A.2d 187.

The court found that when it appeared impossible for Blitz and Price to meet the financial arrangements demanded by the vendor here, the defendant sought Lepofsky's assistance. The defendant knew that Lepofsky could arrange the financing. When Lepofsky had done so, he called the defendant to instruct him concerning the preparation of contracts. Contracts were prepared for the sale to the syndicate and the resale to Blitz and Price; the negotiations proceeded simultaneously, and Lepofsky represented both the syndicate and Blitz and Price. The defendant knew that the syndicate was made up of clients of Lepofsky who were not builders and developers but investors. The court's conclusions that the sale of the Kent property to the syndicate was a method of financing the purchase by Blitz and Price and that the transaction as a whole constituted a sale to Blitz and Price are logical and reasonable on the basis of unchallenged facts found.

The defendant pursues one of three assignments of error in rulings on the admission of evidence. The plaintiff, on his direct examination, was questioned, over the objection of the defendant that the question was irrelevant, concerning negotiations by Blitz and Price to obtain money for the purchase of the Kenneil property. The negotiations were with a syndicate represented by Lepofsky. The finding

fails to disclose what, if any, answer was made to the question, and therefore no error can be predicated on the ruling. *Jenkins* v. *Reichert,* 125 Conn. 258, 264, 5 A.2d 6; *Duncan* v. *Milford Savings Bank,* 134 Conn. 395, 403, 58 A.2d 260. We assume, however, from the court's findings that the financing of the Kenneil purchase was arranged for Blitz and Price in the same manner as the purchase of the Kent property and that the line of inquiry objected to developed evidence of these negotiations. "Unless excluded by some rule or principle of law, any fact may be proved which logically tends to aid the trier in the determination of the issue. Evidence is admitted not because it is shown to be competent, but because it is not shown to be incompetent. No precise and universal test of relevancy is furnished by the law." *Plumb* v. *Curtis,* 66 Conn. 154, 166, 33 A. 998. On the matter of admissibility, it rests in the discretion of the court to determine whether the evidence offered conduces in any reasonable degree to the establishment of the probability or improbability of the fact in issue. Ibid. The fact in issue here was whether there was a purchase of the Kent property by Blitz and Price. Evidence that they had purchased other properties through arrangements with syndicates represented by Lepofsky—arrangements similar to those used in the purchase of the Kent property—was clearly admissible. There was no error in the ruling on evidence.

There is no error.

In this opinion the other judges concurred.