ANTHONY DEL GROSSO *v.* THOMAS J. KELLY

APPELLATE DIVISION OF THE CIRCUIT COURT

FILE NO. CV 10-6405-3446

Argued May 17—decided June 15, 1965

*Richard E. Gruskin,* of New London, for the appellant (defendant).

*Barry H. Sherb,* of New London, for the appellee (plaintiff).

KINMONTH, J. This is an action for a broker's commission on the sale of real estate formerly owned by the defendant. The court rendered judgment for the plaintiff, and from that judgment the defendant has appealed, assigning error in the conclusions of the court upon the subordinate facts.

The facts can be stated in summary as follows: On April 3, 1964, the defendant was the owner of a two-family house located at 40 Berkeley Avenue in New London. The plaintiff was the operator of a real estate business and had in his employ John Gunderson and Robert Perron. On that date, the defendant went to the office of the plaintiff's agency and informed Perron, whom he had known previously, of his desire to sell his two-family house. It was agreed that the plaintiff's firm would inspect the premises the following week, and on April 6, 1964, the plaintiff, Gunderson and Perron went to the premises at about 2 p.m. They inspected the premises with the defendant and discussed a net amount of $15,000 to the defendant and $750 commission to the plaintiff. No definite selling price was agreed upon, since the defendant wished to have another appraisal and it was agreed that a Federal Housing Authority appraisal would be obtained at the plaintiff's expense. The plaintiff informed the defendant that his rates were 5 percent for an exclusive listing and 6 percent for a nonexclusive listing. The defendant refused to give an exclusive listing because he had a relationship with another agency, but he gave permission to the plaintiff to show the premises to prospective purchasers, and he delivered the deed of the premises to the plaintiff.

At approximately 5:30 p.m. on April 6, 1964, the plaintiff's salesman Perron took Keramidas and his wife to inspect the premises and on their arrival they met the plaintiff's salesman Gunderson leaving with Crane, a prospective purchaser who had inspected the house. When Perron and the Keramidas' entered the premises, the defendant's wife was engaged in conversation with a representative of another real estate agency. The defendant was present during part of the time both Gunderson and Perron were showing the premises, and he knew that the premises were being shown to prospective purchasers. Later that day, Gunderson returned to the defendant's house and notified the defendant that he had taken a deposit. Keramidas, after inspection of the premises, gave Perron a deposit. In the early evening of April 6, Perron notified Keramidas that Gunderson had taken a deposit from Crane and that if Crane did not pursue the purchase Keramidas would have first refusal. Keramidas, later in the evening, called the defendant to verify the Crane deposit, and he told the defendant that he was interested in purchasing the premises. The defendant, being upset and disturbed at the rapid sequence of events, told Keramidas to hold off a while. On April 7, the defendant called at the plaintiff's office, waited while the plaintiff copied the description of the property from the deed, and obtained a return of the deed from the plaintiff. On April 12, the plaintiff notified the defendant that the F.H.A. appraisal of the property was $16,000, whereupon the defendant told the plaintiff that the defendant's brother-in-law would pay $17,000, with no commission involved, and the plaintiff recommended that the defendant accept the offer.

On or about May 1, 1964, Perron notified Keramidas that Gunderson's client, Crane, was no longer a prospective customer and that he, Keramidas

could purchase the property. In early May, Perron learned that Keramidas and the defendant were dealing directly with each other concerning the property, and when he called the defendant about their direct negotiations, the defendant informed the plaintiff that he was selling the property to Keramidas. Commencing on April 6, 1964, and continuing through the balance of April into May, Keramidas made many calls directly to the defendant about purchasing the property. Keramidas did not know about the defendant's property until he was shown the property by Perron. On May 5, 1964, the defendant agreed to sell the property to Keramidas for $16,500, and on May 14 a written agreement of sale was entered into. Subsequently, the property was conveyed to Keramidas.

On the foregoing facts, the court concluded that there was a broker-principal relationship formed between the plaintiff and the defendant and that the plaintiff's employee, Perron, produced a buyer, Keramidas, who was ready, willing and able to purchase the premises upon terms prescribed or accepted by the defendant; that the defendant's actions were a deliberate attempt to avoid the payment of a commission; and that the plaintiff was the predominating procuring cause of the sale and was entitled to a broker's commission of 6 percent of the sales price, it being a nonexclusive listing.

The court made a finding, which the defendant did not seek to have corrected. The conclusions of the trial court are to be tested by the finding and not by the evidence. *Gorman* v. *American Sumatra Tobacco Corporation,* 146 Conn. 383, 386.

"A broker earns his commission in a real estate transaction when he procures a customer who is ready, willing and able to purchase upon terms prescribed or accepted by the seller. . . . When, as

in the present case, the agency is not exclusive, the broker's efforts must be 'the predominating producing cause of the sale.' . . . Whether a broker's efforts are the procuring cause of a sale is an issue of fact for the trier, and its conclusion will stand unless it is contrary to, or unsupported by, the subordinate facts, or is in conflict with logic and reason, or is found in violation of some rule of law." *Richter* v. *Drenckhahn,* 147 Conn. 496, 500. The plaintiff, through his employee Perron, made known to Keramidas that the defendant's property was for sale and showed it to him. It is true that the plaintiff took no part in subsequent negotiations between the defendant and Keramidas, but this fact does not defeat his right to a commission. The defendant knew that the plaintiff was a real estate broker and that he had shown the property to Keramidas. The plaintiff's efforts to effect a sale to Keramidas had not been abandoned, as evidenced by his call to Keramidas on or about May 1, and the court could properly conclude that the plaintiff produced the sale. Had it not been for the services of the plaintiff it is fair to conclude that the sale would not have been made. The conclusion of the trial court that the plaintiff was the procuring cause of the sale must stand.

The case presented controversial issues of fact which were solely within the province of the trial court to decide, and the conclusions of the court are legally drawn from the facts found.

There is no error.

In this opinion DEARINGTON and LEVINE, Js., concurred.