A. Charles Setaro, Jr. *v.* Thomas J. Botelho

Circuit Court              Third Circuit

File No. CV 3-677-7039

Memorandum filed December 21, 1967

*Cutsumpas & Collins,* of Danbury, for the plaintiff.

*Papazoglou & Ratchford,* of Danbury, for the defendant.

Wise, J. The plaintiff seeks to recover a commission alleged to be due him for services rendered in procuring buyers for property owned by defendant and listed for sale with plaintiff.

On April 20, 1967, and for some time prior thereto, the plaintiff was a duly licensed real estate broker. Prior to that date, the defendant, owner of a house and land located on Morgan Avenue, Danbury, Connecticut, listed the property for sale with the plaintiff for an agreed commission. The plaintiff produced as prospective purchasers Kenneth and Meredith Mateer, and on April 20, 1967, they and the defendant executed a "real estate purchase form" prepared and presented by plaintiff. This

recited the purchase price, a deposit, and a reference to a federal housing administration mortgage contingency, but no closing date.

Thereafter, on May 4, 1967, the purchasers and the defendant entered into a formal written agreement by the terms of which the former were to purchase the property for the sum of $18,900, with a down payment of $2000. The deed to the property was to be delivered at the law office of the defendant's attorneys "on June 1, 1967, at 2:00 p.m. or at such other time or place as may be subsequently agreed upon by the parties, upon receipt of said payments." The payment was the balance due on account of the purchase price. The agreement contained the following provision: "This contract is contingent upon the buyers obtaining an F.H.A. mortgage in the amount of $16,900.00 at the prevailing F.H.A. interest rate in the Danbury area from any lending institution. If such mortgage is not obtained, then at the option of the buyers, this contract shall be void and all deposits paid hereunder shall be refunded." Thereafter, on May 15, the purchasers applied for an F.H.A. mortgage loan through the Fairfield County Trust Company at Danbury. On May 29, the bank received a conditional approval as to the appraised value of the property and then proceeded to process the application for credit approval of the purchasers. These two steps were necessary to obtain an F.H.A. guarantee of the mortgage loan, i.e. the sufficient appraisal value of the property and the acceptable credit rating of the purchasers. While the loaning institution actually grants this F.H.A. mortgage loan, it does so only if the F.H.A. insures or guarantees the loan. On June 16, F.H.A. rejected the application because of buyers' lack of income to carry the mortgage payments, but on July 7 the bank resubmitted the application to F.H.A. for ap-

proval with additional security. On July 13, the bank received a firm commitment for insurance of the loan from F.H.A., and on July 17 the loan was approved by the bank's executive committee. Thus, there was no firm commitment of the mortgage loan until July 17. By letter dated July 18, the bank notified the parties for the first time that there was now a firm commitment of the mortgage loan.

On July 5, defendant's attorney wrote a letter to the buyers' attorneys, and a copy was sent to plaintiff, as follows: "Please consider this letter formal notice that Mr. Botelho is cancelling any rights of purchase which exist to Mr. and Mrs. Mateer under the contract of April 26, 1967 to property known as 36 Morgan Avenue, Danbury, Connecticut. That duly executed and duly witnessed contract called for closing 'on June 1, 1967 at 2:00 p.m.' This date is 35 days passed. Still the Mateers have no formal written F.H.A. mortgage approval. Mr. William Heath, mortgage officer at the Fairfield County Trust Company, informed me that the F.H.A. turned down the Mateers' first application for credit reasons. The application was then re-submitted. Apparently even at this date, there still is no formal or final F.H.A. acceptance. I am enclosing a Papazoglou and Ratchford, Trustee check, #2376, for $2,000.00 which represents the full amount of the down payment. Please consider this letter and this return of down payment a full and final termination of this matter."

At no time from the date of the contract between the defendant and buyers was there any agreement or understanding between the parties orally or in writing of any change in the closing date, June 1, as provided in the contract. On all dates mentioned herein, the closing date remained as June 1 and was never changed or modified by the parties, nor was any request ever made by the buyers to change the

closing date. The bank also knew that June 1 was the closing date, and it had a copy of the contract when the loan application was made.

A broker earns and is entitled to his commission in a real estate transaction when, but only when, he procures a customer who is ready, willing and able to purchase upon the terms prescribed or accepted by the seller. *Richter* v. *Drenckhahn,* 147 Conn. 496, 500; *Thomas F. Rogers, Inc.* v. *Hochberg,* 143 Conn. 22, 24. The burden of proving those facts is on the broker. *Lesser* v. *Altnacraig Convalescent Home, Inc.,* 144 Conn. 488, 491. The issue presented is: Has the plaintiff, in spite of the cancelation of the contract by the defendant, procured a buyer ready, willing and able to buy, entitling the plaintiff to a real estate commission, if the buyer was unable to close on the date prescribed in the contract but was able to close subsequent thereto, after notification of the firm commitment of the mortgage loan?

It is to be noted that while no time is mentioned in the agreement within which the F.H.A. mortgage was to be obtained, the closing date of the transfer of the property was set as June 1. It is also significant to point out that forty-seven days had elapsed from the closing date, June 1, to July 17, when the loan became firm by the bank's approval, and thirty-five days from the closing date, June 1, to July 5, date of letter of cancelation.

Plaintiff's contention is that the closing date set forth in the contract did not of itself make time of the essence and cites *Calandro* v. *Koons,* 17 Conn. Sup. 374, to sustain his claim. That case is distinguishable from the instant one both factually and in its nature. Here, the suit is for a commission, while a decree of specific performance was sought in the *Calandro* action. While that case holds, in summary, that the fact that a contract sets a date for

the closing of a transaction does not of itself make time of the essence, it does not hold, as the plaintiff contends, that the defendant was obligated to demand that the title be closed by a given date after June 1 before he could cancel the same. Even though that case states that time may be made of the essence by formal demand that title be closed by a given date after the date set forth in a contract, it does not set forth such a procedure as a mandatory procedure for a property to be taken off the market. It is of interest to point out that in the *Calandro* case the time period involved was within four days of the contract closing date, and since under the factual situation the court found that time was not of the essence, the time requirement "became within a reasonable time following the day appointed in the written memorandum." Id., 380. In the instant case, the closing date set forth in the contract was June 1. The cancelation was on July 5. There was no firm commitment of the mortgage until July 17. The performance time is not "within the reasonable time" period suggested in the *Calandro* case.

To entitle the plaintiff to his commission, he had to procure a buyer who was ready, willing and able to purchase. The buyers may have been "willing," but they were not "ready" or "able" to buy on the terms prescribed, nor indeed were they even "ready" or "able" within a reasonable time after notification of cancelation. The court so finds. *Menard* v. *Coronet Motel, Inc.*, 152 Conn. 710; *Cohen* v. *Lenehan*, 134 Conn. 514.

The issues are found in favor of the defendant.

Judgment may enter for defendant.