## BENRUS WATCH COMPANY, INC *v.* CHARLES ROSEN-
### GARTEN ET AL.

BROWN, C. J., JENNINGS, BALDWIN, INGLIS and O'SULLIVAN, Js.

Argued November 6—decided December 11, 1951

*Perry Graicerstein*, for the appellant (defendant Charles Rosengarten Company).

*Max Traurig* and *Michael V. Blansfield*, for the appellee (defendant Winter).

JENNINGS, J. The Charles Rosengarten Company, Henry Butler and Ralph K. Winter claimed the commission for the sale of two industrial buildings by the plaintiff. All agreed that one commission of $3400 was

due. The plaintiff paid this sum into court. Following an interlocutory judgment that the defendants named above interplead, the court concluded on a trial on the merits that Winter was the procuring cause of the sale. The judgment ordered the payment to him of the commission less expenses incurred by the plaintiff in connection with the interpleader action. Only the Rosengarten Company has appealed. It admits, in effect, that unless it is successful in its effort to correct the finding in a substantial manner it cannot prevail. While it is entitled to certain corrections, they are minor and do not affect the result.

The facts are very involved, as is usual in such cases. Those essential to the decision, including those in the draft finding to which the appellant is entitled, may be stated as follows: Harry Brownstein is a garment manufacturer. Charles Rosengarten, president of the Rosengarten Company, is his business and social acquaintance and in 1945 secured leased space for him in Waterbury. Later Brownstein was threatened with eviction. Through Winter he purchased vacant land, and Butler, an architect, prepared plans for a factory building. The estimates for its construction were high and time was pressing. The plaintiff owned a number of industrial buildings in Waterbury and wanted to dispose of them as a unit, a fact known to all defendants. It had been unwilling to sell the buildings separately. Butler was familiar with the buildings and suggested to Winter that they try to get the plaintiff to sell Brownstein its building T, which they felt was suitable for Brownstein's purposes. Butler and Winter talked to the representatives of the plaintiff on either June 10 or 11, 1948, and persuaded them to sell building T separately. They communicated this offer to Brownstein, who went through the building and agreed to buy it, although he wanted to get it cheaper than the asking

price of $2 per square foot. He also requested that the closing should be handled by his friend Rosengarten, and Winter agreed to this. At the instance of the plaintiff, Winter also agreed that there should be but one commission. On June 12 the parties and the attorneys met and, after a long session, the plaintiff agreed to sell building T to Brownstein for $50,000 cash. This agreement was reduced to writing and signed.

Plaintiff's building R was attached to and formed a single unit with T. Their separation would require considerable alteration. Winter persuaded Brownstein to purchase R, and he did purchase it later for $18,000. His agreement to do so was combined in a revision of his agreement to purchase T.

The defendants had the power to agree among themselves to a division of the commission. Such an agreement was made between Butler and Winter. The trial court ruled correctly that it was not concerned with any such agreement. Its duty was to award the commission to "the one who deserves to be regarded as the procuring cause of the sale by reason of his efforts having been an efficient proximate cause in its accomplishment, or, as otherwise expressed, the 'predominating efficient cause' of such accomplishment." *Murphy* v. *Linskey*, 94 Conn. 475, 478, 109 A. 412. The decision of this question is "one of fact and conclusive, 'unless contrary to or unsupported by the subordinate facts, or in conflict with the settled rules of logic and reason, or found in violation of some rule or principle of law.' " *Pentin* v. *Gonsowski*, 138 Conn. 43, 48, 82 A. 2d 157. The situation is well summarized by the trial court in its memorandum of decision: "The facts disclose that before Rosengarten was called in, Winter had persuaded Benrus to abandon [the] plan to dispose of [its] property as a whole, and he also persuaded Benrus

of the wisdom of separate sales. Winter's efforts also caused Brownstein to buy Building T. These events all occurred before Brownstein called Rosengarten. Brownstein on his own responsibility called Rosengarten in to act for him in closing the sale. Winter's efforts were the sole, efficient and effective means in causing the sale of Building T to Brownstein. . . . After Brownstein made plans to build, Rosengarten ceased looking for a building for Brownstein. Rosengarten knew of the Benrus property; he was also a friend of Brownstein and knew his problem, but Winter plus Butler had the right solution to the problem, and Winter by using the solution effected the sale. Rosengarten missed the idea which solved the problem. Rosengarten had never tried to sell the Benrus property to Brownstein."

The subordinate facts support the conclusion that Winter was the procuring cause of the sale. As stated above, that conclusion must stand unless it is in conflict with the rules of logic or was reached in violation of a rule of law. *Seward* v. *M. Seward & Son Co.,* 91 Conn. 190, 193, 99 A. 887. It is obvious that it is not in conflict with either. The fact that a sale is ultimately consummated through another broker or directly by the owner does not defeat the right of the broker who initiated the deal to his commission if negotiations were not broken off and he is found to be the procuring cause of the sale. *Ranney* v. *Rock,* 135 Conn. 479, 482, 66 A. 2d 111; *Housatonic Valley Ins. Agency, Inc.* v. *Klipstein,* 125 Conn. 274, 280, 5 A. 2d 16; *Fisher* v. *Hanson,* 99 Conn. 703, 706, 122 A. 906; *Provost* v. *Burgin,* 287 Mass. 273, 274, 191 N. E. 362. The negotiations were not broken off. The whole transaction as to the large item, building T, took at most three days. In view of the numerous authorities referred to in these cases, further citation of authority is unnecessary.

There is no error.
In this opinion the other judges concurred.