## Bonnie W. Crowder *v.* The Zion Baptist Church, Inc., et al.

Inglis, C. J., Baldwin, O'Sullivan, Wynne and Daly, Js.

Argued November 2, 1955—decided January 3, 1956

*William B. Hennessy,* with whom was *Catherine P. Hanlon,* for the appellant (plaintiff).

*William W. Gager,* for the appellees (defendants).

DALY, J. In this action the complaint contained two counts, the first alleging breach by the defendant church of a contract employing the plaintiff as its pastor and the second alleging fraudulent transfer of property by it, acting through its agents, the individual defendants. The jury returned a verdict for the named defendant on the first count and for all defendants on the second count. The plaintiff has appealed.

From the finding, which cannot be altered to meet the plaintiff's criticisms, it appears that the plaintiff offered evidence to prove the following facts: He is a duly ordained Baptist minister. The defendant church is an ecclesiastical corporation organized under the laws of this state and having a church building for worship in the city of Waterbury. We shall herein refer to that defendant as the corporation. The individual defendants are members of the building fund committee of the church and trustees of the corporation. On November 14, 1928, the corporation issued to the plaintiff a call to become its pastor. He accepted the call, came to Waterbury and commenced his duties on the first Sunday of December, 1928. The contract of employment provided that the corporation would pay the

plaintiff a monthly salary of $100 and, in addition, would pay for the rental of the parsonage to be occupied by him and his family and for the fuel used to heat the parsonage. The contract also provided that should the pastor or the corporation desire to sever their relationship a three months' notice should be given. The plaintiff performed his duties in a satisfactory manner for a considerable period of time, and the membership of the church increased from 100 more than fourfold. The contract of employment remained in full force and effect until December 31, 1950, when the plaintiff's employment terminated, except that his salary was raised as follows: in 1942 from $100 a month to $27 a week, in 1944 from $27 to $32 a week, in 1945 from $32 to $45 a week, and in 1949 from $45 to $50 a week. These raises were given as the church membership increased.

During the period from December 2, 1928, to and including March 31, 1942, the corporation was in arrears in the payment of salary in an aggregate amount of $4037.80. During this period, it was in arrears in the payment of rent for the parsonage in an aggregate amount of $1600. For the period from December 2, 1928, to and including December 31, 1941, it owed the plaintiff $2191.43 for fuel used to heat the parsonage. It also owed him an additional sum, the amount of which was not proved, for fuel used between January 1 and March 31, 1942. The total of salary, rent expense and fuel expense owing to the plaintiff by the corporation on March 31, 1942, without interest, was $7829.23, plus fuel cost for three months. Interest upon the arrears of salary, rent and the known fuel bill amounted to $3341.78 on March 31, 1942. As of the end of 1941, the total due the plaintiff from the corporation for salary, rent, fuel and interest was $11,335.01.

Prior to 1942, the plaintiff had, on numerous occasions, discussed the arrears with members of the congregation and had submitted several statements of the balance due him. On March 27, 1942, a church meeting was held and the matter of back salary, unpaid fuel bill and unpaid rent was taken up. At that meeting, the church, acting through its representatives, agreed to pay $2200 on account on the total sum owed to the plaintiff by the corporation. On a few occasions, the plaintiff had been advanced small sums, totaling $150, from the church funds without the formality of a vote and for his convenience to meet emergencies. The balance due thereon to the corporation in March, 1942, was $90, and this balance was treated by the plaintiff as a payment of part of the sum of $2200. Thereafter, the corporation paid the plaintiff the remaining $2110. The exact amount due the plaintiff on March 27, 1942, for back salary, fuel, rent and interest was not then definitely fixed.

The paper which the corporation claimed was an agreement providing for the payment of $2200 by it to the plaintiff in full settlement of its indebtedness to him was not signed by him or, if it was, was a blank piece of paper when he affixed his signature to it. A receipt dated August, 1943, and signed by the plaintiff did not contain the words "in full on back salaries and other debts" at the time it was signed by him. Relations between the plaintiff and the corporation became increasingly strained, largely because of the repeated demands of the plaintiff for payment of the amounts which he claimed were owing to him.

At a church meeting in November, 1950, it was voted to ask the plaintiff for his resignation. He was not present and claimed that the meeting was

not a legal one. About November 26, 1950, from the pulpit, he called a church meeting for December 9, 1950, for the purpose of settling the question of his resignation, stating that he would have to be governed by what was voted at that meeting. The meeting was held, and it was voted to require the plaintiff to resign. He wrote out his resignation, which was to become effective on December 31, 1950, and read it at a church meeting on December 17, 1950, at which time the members of the church accepted it. He was paid his salary to December 31, 1950. He did not waive any of the provisions of his contract of employment, including the one requiring that three months' notice should be given if either the pastor or the corporation desired to sever their relationship. The corporation then owed the plaintiff $2316.18 as unpaid salary, $3791 for the rental of the parsonage, and $4192.33 for fuel. Interest of $7397.63 should be added, bringing the total indebtedness of the corporation to $17,697.14.

The corporation offered evidence to prove the following facts: From the date of the plaintiff's original employment, the first Sunday of December, 1928, up to 1942, the corporation failed to make all of the payments required under the contract of November 14, 1928. It was not possible to determine from the church records exactly what payments had been made or the exact dates on which they were made, although admittedly a substantial sum was owing to the plaintiff. Over a period of several years prior to 1942, he had submitted statements of varying accounts which he claimed were owing to him. On March 18, 1942, an informal meeting was held and attended by the plaintiff and a group of members of the church. The entire matter was discussed, and it was orally agreed that the whole question would

be settled by the corporation's paying the plaintiff $2200 as a settlement on the back debt, by its paying him $27 a week thereafter, the plaintiff to be responsible for his own fuel and lights, and that no interest would be charged on the $2200 if at least $100 or $150 was paid in reduction of the balance each year. At that meeting, the plaintiff claimed varying amounts to be due him, going as high as $4000. The exact amount was never determined. Without interest charges, the plaintiff's statement of January 1, 1942, showed a balance of $2390.57 for salary, rent expense and fuel expense.

At a business meeting of the corporation on March 27, 1942, the proposed settlement was approved, and it was voted that the agreement be reduced to writing and signed by the committee. At that time, the corporation had no funds with which to pay the sum of $2200. A special drive was put on to raise the money, and a substantial sum was contributed for that purpose by the church members. From March 27, 1942, to December 31, 1950, the salary of the plaintiff was paid as required by the agreement which had been approved on March 27, 1942, except that certain increases in the salary figure were made. In December, 1942, a church meeting was had and a written agreement, embodying the terms which had been authorized at the informal meeting of March 18, 1942, and confirmed at the formal meeting of March 27, 1942, was signed by the plaintiff and by the committee of the corporation.

In December, 1942, $200 and, on January 9, 1943, $1210 were paid under the new agreement. Before the last-named date, the plaintiff had borrowed several sums from the corporation, which he repaid with the exception of $90. This $90 was, by agreement with the plaintiff, credited against the $2200 to be

paid by the corporation. In August, 1943, a church meeting was held at which the plaintiff was paid the further sum of $700 under the agreement, and a receipt containing the words "in full on back salaries and other debts" was delivered to the corporation. The receipt, when first tendered by the plaintiff, did not contain these words, but on the insistence of representatives of the corporation that the receipt contain them the plaintiff left the meeting and returned with the words typed in, and thereupon the payment of $700 was made and the receipt was delivered.

On March 10, 1944, the salary of the plaintiff was raised to $32 a week. On March 18, 1945, upon his suggestion that he give up the parsonage as soon as convenient and pay rent of $25 a month as long as he occupied it, his salary was raised from $32 to $45 a week. He occupied the parsonage until March, 1946, and paid the corporation the monthly rental of $25. On January 15, 1949, his salary was raised to $50 a week.

In 1950, the relations between the plaintiff, as pastor, and the members of the church became strained. As a result, on November 18, 1950, the members of the church voted to request the resignation of the plaintiff, and a committee was appointed to meet with him and the board. On Sunday, December 3, 1950, the plaintiff announced that a church meeting would be held on December 9, 1950, to act on his resignation and stated that those eligible would vote as to whether he should go or stay and that he would be governed by their vote. On December 9, 1950, the members of the church voted to require his resignation, to be effective on December 31, 1950. On December 17, 1950, the plaintiff tendered his written resignation, which was accepted,

and requested the return of his contributions to the church building fund. At a meeting on December 31, 1950, he stated that if he was repaid the sum of $173.55, his contribution to the building fund, that would be all he would want from the corporation. Neither the plaintiff nor the corporation required three months' notice of termination, and any rights with regard thereto were waived by both parties. The corporation paid the plaintiff his salary through December 31, 1950, and returned his contribution to the building fund. From August, 1943, when the final payment of $700 was made under the agreement providing for the payment of $2200, the plaintiff made no claim or demand of any kind for back salary, rent or fuel bills until the institution of the present action. At no time prior to its institution did either the plaintiff or the corporation refer to any three months' notice to be given in connection with the plaintiff's resignation. No fraudulent transfer of funds was made at any time. The plaintiff has not been wrongfully prevented from reaching the corporate assets.

The plaintiff claims that the court erred in denying his motion to set aside the verdict. He bases this assertion upon his contention that, since he offered no evidence to prove the facts alleged in the second count of his complaint and counsel for the defendants was advised that it was not being pursued, this count was, in effect, withdrawn and the court should not have submitted any issue upon it to the jury for consideration. The plaintiff did not at any time file, or seek permission to file, a withdrawal of the second count of his complaint. Furthermore, during a discussion of the forms of verdicts to be submitted to the jury, counsel for the defendants made claim to the court that the jury should

pass upon the issues raised by the second count. At this point, one of the plaintiff's counsel stated, "It is all right, if your Honor please." The plaintiff cannot claim that the court erred in submitting to the jury for their consideration the issues upon the second count, as action induced by an appellant cannot be made a ground of error. *Chapin* v. *Popilowski,* 139 Conn. 84, 88, 90 A.2d 167; *Battistelli* v. *Connohio, Inc.,* 138 Conn. 646, 650, 88 A.2d 372. The court did not err in denying the plaintiff's motion to set aside the verdict.

In twelve paragraphs of the assignments of error, the plaintiff claims that the court erred in charging the jury. In the first of these, he contends that the court erred in charging the jury that the second count of the complaint alleged a fraudulent transfer of property. This claim, which is a restatement of the one previously discussed, requires no additional comment.

In several of the twelve assignments of error directed at the charge, the plaintiff complains of instructions to which he took no exceptions. Section 153 of the Practice Book provides that this court "shall not be bound to consider error as to the giving of, or the failure to give, an instruction unless the matter is covered by a written request to charge or exception has been taken by the party appealing immediately after the charge is delivered." It also provides that counsel "taking the exception shall state distinctly the matter objected to and the ground of objection."

The plaintiff's first exception was taken to the portion of the charge in which the court said: "[W]here there are more than one or two specific sums claimed to be due, but there is a dispute as to which is the proper amount, the demand is re-

garded as unliquidated, within the meaning of that term as applied to the subject of accord and satisfaction." Immediately before stating this, the court had said: "The defense of accord and satisfaction requires the defendant to allege and prove a new contract based upon a new consideration which must be offered by the debtor . . . and accepted by the creditor . . . with intent to satisfy the whole claim, and that such will be the effect of the acceptance must be made known to the creditor . . . in some unmistakable manner so he is bound to understand that if he takes it he takes it in full satisfaction of his claim." The court did not err in charging the jury as it did in the portion of the charge excepted to. *Perryman Burns Coal Co.* v. *Seaboard Coal Co.,* 128 Conn. 70, 73, 20 A.2d 404; *Hanley Co.* v. *American Cement Co.,* 108 Conn. 469, 473, 143 A. 566.

As the plaintiff's counsel, in taking his other exceptions to the charge, did not state distinctly the matter objected to and the grounds of objection, we do not consider any of them. *Ladd* v. *Burdge,* 132 Conn. 296, 297, 43 A.2d 752; Practice Book § 153.

The plaintiff's claims that the court erred in failing to charge in accordance with twenty-one paragraphs of his requests to charge are without merit. The charge fully and accurately covered many of the subjects requested. Error may not be predicated upon the court's failure to charge in the exact language of the requests. *Hunyadi* v. *Stratfield Hotel, Inc.,* 143 Conn. 77, 82, 119 A.2d 321; *Jacobs* v. *Swift & Co.,* 141 Conn. 276, 280, 105 A.2d 658; *Ziskin* v. *Confietto,* 137 Conn. 629, 632, 79 A.2d 816. It is enough if the instructions upon the points involved are correct and adequate. *Shuchat* v. *Stratford,* 125 Conn. 566, 569, 7 A.2d 387. The plaintiff's claims that the court erred in failing to charge as requested

upon the question of damages are not discussed since the jury found the issues for the corporation upon the first count and for it and the other defendants upon the second count. *Cornwell* v. *Rosoff,* 137 Conn. 458, 460, 78 A.2d 544. Error was not committed by the court's failure to charge in accordance with requested instructions which assumed the truth of disputed facts or facts which had no support in the evidence. *State* v. *Tomassi,* 137 Conn. 113, 126, 75 A.2d 67. Error in a refusal to charge occurs only when the request is pertinent and correct and the court has not fairly covered the particular point raised. Maltbie, Conn. App. Proc., p. 92.

Many of the plaintiff's assignments of error are related to the allegation in his complaint that it was agreed that the salary provided for in the contract of November 14, 1928, would be increased in accordance with the increase in membership of the church. All of these assignments of error are without merit.

The final assignments of error deal with sundry rulings on evidence. We have examined all of these rulings and find none which, if erroneous, was harmful.

There is no error.

In this opinion the other judges concurred.