WALTER B. RICHTER *v.* KATHLEEN C. DRENCKHAHN ET AL.

BALDWIN, C. J., KING, MELLITZ, SHEA and ALCORN, JS.

Argued May 4—decided July 6, 1960

*Saul Kwartin,* for the appellant (named defendant).

*Morgan P. Ames,* for the appellee (plaintiff).

BALDWIN, C. J. The plaintiff, a real estate agent, recovered a judgment against the named defendant, hereinafter called the defendant, for a commission on the sale of real estate belonging to her and her two sons. She has appealed, assigning error in the finding of subordinate facts, in a ruling on evidence, and in the court's conclusion from the subordinate facts. The errors assigned in the finding were waived during argument in this court and will not be considered.

The facts can be stated in summary as follows: On July 30, 1956, the defendant and her two sons owned a parcel of undeveloped land on Sheep Hill Road in Greenwich. She listed the property for sale with the plaintiff, whom she knew to be a real estate agent. The price was $100,000 net to her. She also had the property listed with other real estate agents in Greenwich. Beginning in October, 1956, she advertised it in various newspapers. On or about August 3, 1956, the plaintiff showed the property to Leon N. Lapine, a real estate developer doing business as the Peerless Construction Company with offices in Stamford. Lapine was about to complete a development on Bramble Lane in Greenwich, and he was looking for more property to develop. The plaintiff had known Lapine for ten years and had previously found properties for him for development purposes. He knew that Lapine was looking for more land. Lapine at first evinced interest but said later that he was not interested. The plaintiff made out a "notification of showing" slip dated August 3, 1956, with a carbon copy, noting that the Sheep Hill property had been shown to Lapine. Both original and copy were contained in a small book from which the pages could be torn. He gave the original to the defendant and left the copy in his book. The defendant, with her husband, had managed and developed real estate for many years; she was an experienced real estate operator. The plaintiff continued his efforts to sell the Sheep Hill property and also another property, on Stanwich Road, belonging to the defendant. He visited the defendant's home on numerous occasions in connection with his efforts to sell her properties and left with her written communications concerning prospects, but, in the defendant's own words, the

plaintiff's visits did not "impress" her, his written memoranda were "silly," and she dropped them in her wastepaper basket. She did not, however, tell the plaintiff to desist in his efforts to find purchasers.

During this period, the plaintiff saw Lapine at his Bramble Lane development, which was near the plaintiff's home, and continued his efforts to sell the Sheep Hill property to him. The plaintiff submitted to the defendant an offer from Lapine for the Stanwich Road property and also an offer from another developer for the Sheep Hill property. The defendant refused both offers. On November 26, 1956, Anthony M. Carvette, Jr., an excavating contractor who had been working for Lapine on his Bramble Lane development and had seen the defendant's advertisement of the Sheep Hill property in a local newspaper, told the defendant that he had found a purchaser. He took Lapine to see the Sheep Hill property. On December 6, 1956, Lapine made a deposit on the purchase of it. On December 28, he entered into a contract with the defendant and her sons to buy the property for $100,000. In the contract, Lapine agreed to save the defendant and her sons harmless "from any claim for a broker's commission for procuring the sale," a clause which the defendant, although an experienced real estate operator, had never used before in her real estate dealings. When the plaintiff learned of the sale and inquired of the defendant concerning his commission, she stated that she had sold to Lapine through a "contractor," whom she declined to name.

The trial court concluded that the plaintiff was the procuring cause of the sale and rendered judgment for a commission of $5500, an amount fixed according to the regulations of the Stamford real

estate board, concerning which the plaintiff had advised the defendant when she first listed her properties with him.

A broker earns his commission in a real estate transaction when he procures a customer who is ready, willing and able to purchase upon terms prescribed or accepted by the seller. *Metz* v. *Hvass Construction Co.,* 144 Conn. 535, 536, 135 A.2d 363; *Thomas F. Rogers, Inc.* v. *Hochberg,* 143 Conn. 22, 24, 118 A.2d 910, and cases cited. When, as in the present case, the agency is not exclusive, the broker's efforts must be "the predominating producing cause of the sale." *Kane* v. *Brunneau,* 141 Conn. 242, 246, 105 A.2d 187. Whether a broker's efforts are the procuring cause of a sale is an issue of fact for the trier, and its conclusion will stand unless it is contrary to, or unsupported by, the subordinate facts, or is in conflict with logic and reason, or is found in violation of some rule of law. *Metz* v. *Hvass Construction Co.,* supra; *Kane* v. *Brunneau,* supra. The plaintiff made known to Lapine that the defendant's property was for sale and showed it to him. It is true that the plaintiff took no part in subsequent negotiations between the defendant and Lapine, but this fact does not defeat his right to a commission. *Metz* v. *Hvass Construction Co.,* supra, 537. The defendant knew that the plaintiff was a real estate broker and that he had shown the Sheep Hill property to Lapine before Carvette had. See *Housatonic Valley Ins. Agency, Inc.* v. *Klipstein,* 125 Conn. 274, 280, 5 A.2d 16. Although Lapine had said that he was not interested, the plaintiff continued his efforts to induce Lapine to purchase; he also tried to find another purchaser. The defendant knew of his efforts and did nothing to discourage them. Lapine did not actually purchase the Sheep Hill

property until after he had gone over it again with Carvette; nevertheless, the plaintiff's efforts to effect a sale to Lapine had not been abandoned, and the court could properly conclude that they produced the sale. *Benrus Watch Co.* v. *Rosengarten,* 138 Conn. 393, 396, 85 A.2d 487; *Ranney* v. *Rock,* 135 Conn. 479, 482, 66 A.2d 111; *DeToro* v. *Cannata,* 114 Conn. 712, 713, 157 A. 270; *Fisher* v. *Hanson,* 99 Conn. 703, 706, 122 A. 906. Its conclusion must stand.

The defendant also claims that the admission in evidence of the plaintiff's carbon copy of the August 3, 1956, "notification of showing" slip was harmful error. On his direct examination, the plaintiff offered the carbon copy in evidence and the defendant objected, claiming that it was not the best evidence. The court interrupted at this point to suggest that the defendant produce the original. The defendant objected, arguing that the plaintiff had not given any notice to produce it. The trial court overruled the objection. Ordinarily, a party intending to offer a copy of an original document, presumably in the possession of an adverse party, should first show that a notice to produce has been given to, or a subpoena duces tecum has been served upon, the adverse party. *City Bank* v. *Thorp,* 78 Conn. 211, 218, 61 A. 428; see *Banks* v. *Connecticut Ry. & Lighting Co.,* 79 Conn. 116, 118, 64 A. 14; *Brown* v. *Connecticut Light & Power Co.,* 145 Conn. 290, 295, 141 A.2d 634. The court took the matter out of counsel's hands and cut off any immediate opportunity for counsel to lay a proper foundation for the introduction of the secondary evidence. Later, when the defendant was questioned on cross-examination concerning names on papers given to her by the plaintiff, she stated that she did not know

the names because she had dropped the papers in her wastepaper basket. She denied having received the original of the "notification of showing." The plaintiff's evidence having placed the original in the hands of the defendant and she having denied receiving it and having stated that she had destroyed any papers left with her by the plaintiff, it became impossible to account for the whereabouts of the original. The situation was virtually one of a lost document. Under these circumstances, although they were developed after the admission of the exhibit in evidence, the defendant is in no position to assert lack of notice to produce or want of a subpoena duces tecum. By her own testimony either would have been futile. *Mary Fletcher Hospital* v. *Barre,* 117 Vt. 430, 432, 94 A.2d 226; 4 Wigmore, Evidence (3d Ed.) § 1203; see *Shepard* v. *Giddings,* 22 Conn. 282, 283; *Stirling* v. *Buckingham,* 46 Conn. 461, 464. The admission in evidence of the copy of the "notification of showing" did not constitute reversible error.

There is no error.

In this opinion the other judges concurred.