ARCHIBALD G. MARSHALL *v.* STURGESS AND JOCKMUS, INC.

BALDWIN, C. J., KING, MURPHY, SHEA and ALCORN, Js.

Argued October 4—decided October 31, 1962

*Charles G. Albom,* with whom, on the brief, was *Donald E. Stevens,* for the appellant (plaintiff).

*Macgregor Kilpatrick,* with whom, on the brief, was *Stanley D. Josephson,* for the appellee (defendant).

BALDWIN, C. J.   On and before August 1, 1958, Mrs. Doris C. Frank was a licensed real estate salesman employed by the plaintiff, a licensed real estate broker.  Mrs. Frank had previously sold two houses in the defendant's housing development, Blackstone Acres, and had been paid commissions.  The plaintiff had a general listing of the defendant's properties and was not an exclusive agent.  Early in July, 1958, Mr. and Mrs. Herbert C. Neumann had, by themselves, seen and inspected an L-shaped ranch house in Blackstone Acres.  On July 30, 1958, Herbert spoke to Mrs. Frank concerning the ownership of this house, then in the course of construction, and inquired whether it was for sale.  On that date, Mrs. Frank showed Herbert all the models in Blackstone Acres, as well as other properties.  On August 1, 1958, she showed both the Neumanns the properties she had shown Herbert two days before.  Mrs. Neumann liked the L-shaped ranch house and did not want any other.  On August 6, accompanied by Mrs. Frank, the Neumanns went to the defendant's office and executed a contract to purchase that house from the defendant for $19,025.  They paid a deposit of $1000.  The contract, at the Neumanns' insistence,

was conditioned on their obtaining a federal housing administration mortgage in order to minimize the amount of the down payment. Within a few days after the contract was executed, the Neumanns' application for the mortgage was refused because their income was insufficient. At their request, the defendant, through the plaintiff, returned the $1000 deposit, and the Neumanns' copy of the executed contract was returned to the defendant, it being the understanding of both parties that the transaction had failed.

The decision of this case, wherein the plaintiff seeks to recover a broker's commission, turns on the effect of the return of the deposit and of the purchasers' copy of the contract. The Court of Common Pleas found that although the Neumanns were anxious to buy the house, they did not have the necessary funds or a method of financing which would enable them to effect the purchase; that neither the plaintiff nor Mrs. Frank made any effort to arrange or provide for a satisfactory method of financing; and that their participation in the negotiations ceased with the return of the deposit and of the purchasers' copy of the contract. These findings are challenged by the plaintiff, but they are supported by credible evidence.

Very shortly after the return of the deposit and of the copy of the contract, Mrs. Neumann consulted another agency, which suggested a second mortgage and that the Neumanns seek the help of Charles T. Sturgess, an officer of the defendant corporation. After Sturgess had made inquiry at a savings bank, the Neumanns applied to the bank and secured a commitment for a loan. On August 21, 1958, the parties executed another contract for the purchase of the L-shaped ranch house. This contract was

generally similar to the previous one except as to the method of financing. The transaction was finally consummated on November 24, 1958.

"A broker earns his commission in a real estate transaction when he procures a customer who is ready, willing and able to purchase upon terms prescribed or accepted by the seller." *Richter* v. *Drenckhahn,* 147 Conn. 496, 500, 163 A.2d 109, and cases cited. When, as in the case at bar, the agency is not an exclusive one, the broker's efforts must be the predominating producing cause of the sale. Ibid. Whether they were is an issue of fact for the trier, and its conclusion must stand unless it is contrary to, or unsuppported by, the subordinate facts, or is in conflict with logic and reason, or is reached in violation of some rule of law. Ibid.

The defendant did sell, and for the same price, to the purchasers with whom the negotiations arranged by Mrs. Frank were carried on. But the contract which resulted from those negotiations was rescinded at the request of the purchasers because they were unable to finance it according to its terms. Thereafter, new negotiations were instituted in which the plaintiff took no part. These negotiations resulted in the consummation of the sale. Two of the trial court's findings are crucial: (1) that the plaintiff did nothing to reactivate negotiations after the rescission of the contract; (2) that the plaintiff's participation in the negotiations had terminated when the plaintiff, through Mrs. Frank, returned the deposit to the Neumanns and took back their copy of the contract. These facts bring the case within the rule of cases like *Kane* v. *Brunneau,* 141 Conn. 242, 246, 105 A.2d 187; *Neville* v. *Yaknunas,* 132 Conn. 627, 630, 46 A.2d 342; and *Murphy* v. *Linskey,* 94 Conn. 475, 479,

109 A. 412. In the light of these findings, we cannot say as a matter of law that the plaintiff was the predominating producing cause of the sale.

There is no error.

In this opinion the other judges concurred.