BERNARD BUSKER *v.* THE UNITED ILLUMINATING COMPANY

KING, C. J., ALCORN, HOUSE, THIM and RYAN, Js.

Argued March 7—decided May 10, 1968

*John D. Fassett,* with whom were *S. Robert Jelley* and, on the brief, *Frank E. Callahan,* for the appellant (defendant).

*Noel R. Newman,* with whom were *Richard J. Joseph* and, on the brief, *Edgar W. Krentzman,* for the appellee (plaintiff).

KING, C. J.  This is an action claiming damages for fraudulently depriving the plaintiff of an oppor-

tunity to earn a commission on the sale of real property. The defendant has appealed from the judgment on a verdict for the plaintiff, assigning as errors the court's denial of its motion to set aside the verdict as unsupported by the evidence and the court's refusal to give one request to charge.

(a)

If, on the evidence as presented and under the pleadings, the jury could reasonably have found in accordance with the verdict as rendered, it could not be set aside as being against the evidence. *Lucier v. Meriden-Wallingford Sand & Stone Co.,* 153 Conn. 422, 427, 216 A.2d 818; *Goodman v. Norwalk Jewish Center, Inc.,* 145 Conn. 146, 154, 139 A.2d 812. The evidence must be given the most favorable construction, in support of the verdict, to which it is reasonably entitled. *Lucier v. Meriden-Wallingford Sand & Stone Co.,* supra; *Kerrigan v. Detroit Steel Corporation,* 146 Conn. 658, 659, 154 A.2d 517. Except in the one respect hereinafter discussed in subdivision (b) of this opinion, the charge as given must be presumed to have been correct and adequate. *Topps v. Marino,* 149 Conn. 145, 149, 176 A.2d 569.

It must also be borne in mind that since this is a civil case the plaintiff would have sustained his burden of proof as to any essential element in his cause of action if the evidence, considered fairly and impartially, induced in the mind of the trier a reasonable belief that it was more probable than otherwise that the facts involved in that element were true. *Darrow v. Fleischner,* 117 Conn. 518, 520, 169 A. 197.

Fraud, of course, is not to be presumed and must be strictly proven by clear, precise and unequivocal

evidence. *Creelman* v. *Rogowski,* 152 Conn. 382, 384, 207 A.2d 272. But the intent to defraud must usually, as was the case here, be proven by circumstantial evidence. See cases such as *State* v. *Vars,* 154 Conn. 255, 263, 224 A.2d 744.

There was evidence from which the jury might reasonably have found the following facts: The plaintiff, a licensed real estate broker, was seeking a purchaser for a certain property known as the Locomobile property on Main Street in Bridgeport under a general listing such that he (the plaintiff) would be entitled to receive from the seller a commission of 6 percent of the purchase price if the plaintiff effected a sale.[1]

The defendant is the owner of a plant for generating electricity which is located in Bridgeport on land adjoining the Locomobile property. The plaintiff, believing that he could interest the defendant in purchasing that property, called at the defendant's Bridgeport office seeking the person in charge of real estate. He was referred to Arthur D. McGovern, the defendant's real estate engineer, whose job consisted of buying, selling and managing the defendant's real estate. On August 14, 1962, the plaintiff informed McGovern by telephone that he had a property which the defendant might wish to buy, and the plaintiff, on McGovern's assurance that he would be protected as a broker, identified the property. During the course of this and subsequent telephone conversations, the plaintiff agreed to, and did, furnish McGovern with written information about the property; and the purchase

---

[1] The seller was a corporation known as the Main Henry Estate. It acted through its president, William Kreiger, and for convenience he, rather than the corporation, will be referred to as the seller.

price, as discussed by McGovern and the plaintiff, dropped from \$850,000 to around \$700,000. McGovern discussed the matter with Edward H. Walton, who was the defendant's vice-president responsible for real estate and McGovern's superior in the company. Walton then informed McGovern that the defendant for some time had desired to purchase the property but had decided to conceal its identity as a buyer in order to avoid being charged an excessive price. McGovern was told by Walton not to discuss the matter with an agent for the seller since the defendant preferred to act, in attempting to acquire the property, as an undisclosed principal. Thereafter, the plaintiff was unable to communicate with McGovern, who would not return his calls. In May, 1963, the plaintiff learned through a newspaper article that the defendant had purchased the Locomobile property. The purchase had been accomplished, at a price of \$715,000, through the defendant's attorney and Oliver Knight, who had been employed by the attorney to assist in the purchase of the property. Knight did not know the identity of his undisclosed principal. The property was first conveyed by the seller to William P. Gumpper, another attorney employed on behalf of the defendant, in his own name as trustee for an undisclosed principal, and he afterward transferred it to the defendant. It does not appear that Gumpper knew of the plaintiff's prior connection with the defendant's purchase of the property. Until the final transfer to the defendant, the seller did not know that the defendant was the actual buyer although he did know that the buyer was an undisclosed principal.

From these facts the jury could have inferred that the plaintiff had obtained a substantial price concession from the owner and could have concluded

that the plaintiff was the "effectual procuring cause", or, as our more recent cases phrase it, the "predominating producing cause", of the sale and that, but for the conduct of the defendant, he would have been entitled to a broker's commission from the seller, under the rule of cases such as *Benrus Watch Co.* v. *Rosengarten*, 138 Conn. 393, 396, 85 A.2d 487, and *Marshall* v. *Sturgess & Jockmus, Inc.*, 150 Conn. 59, 62, 185 A.2d 472.

The complaint, in material part, alleges that the defendant, by its fraudulent conduct in connection with its purchase of the property directly from the owner, "deprived the plaintiff of an opportunity to earn a commission for the sale of said property and . . . deprived him of the commission which he would [otherwise] have justly earned".

It is obvious that the cause of action alleged and relied upon is a tortious (in this case fraudulent) interference with a business expectancy, under the rule of cases such as *Skene* v. *Carayanis*, 103 Conn. 708, 715, 131 A. 497, and *Goldman* v. *Feinberg*, 130 Conn. 671, 675, 37 A.2d 355. See also *Wyeman* v. *Deady*, 79 Conn. 414, 417, 65 A. 129; notes, 97 A.L.R. 1273, 146 A.L.R. 1417; 12 Am. Jur. 2d, Brokers, § 164.

The essential elements of the plaintiff's cause of action are: (1) the defendant's conduct was tortious in that it was fraudulent; and (2), as a proximate consequence of that fraudulent conduct, the plaintiff suffered actual loss, as alleged, in being deprived of an opportunity which he would otherwise have had to earn his commission from the seller. *Skene* v. *Carayanis*, supra; *Goldman* v. *Feinberg*, supra.

The jury could also have found that the defendant knew, as far back as August, 1962, that the

plaintiff was attempting to sell the property as a broker for the owner and that McGovern had told the plaintiff that he would be protected as a broker and thereby had induced the plaintiff to disclose the identity of the property to be sold and certain detailed information about it. The jury could also have considered that certain language in the bond for a deed to Gumpper was significant. This was a provision that the parties (the seller and Gumpper) represented "that they have dealt with no other agent in this sale to William P. Gumpper, as Trustee than . . . Oliver Knight, whose commission as broker will be paid by the Purchaser, and the purchaser has not disclosed his principal to the seller". It appears that, as far as the seller and Gumpper knew, the quoted language was correct.

Thus, the jury could have found that the seller lacked knowledge, at the vital time of the sale to Gumpper, that he was actually selling to the same buyer as the plaintiff had told him about in 1962 in persuading him to lower his asking price, but that the defendant, on the other hand, knew that it was the actual buyer and also knew that it was the one with which the seller, through the plaintiff as his agent, had negotiated in August of 1962. The jury could also have found from the evidence, including the quoted language from the bond for a deed, that the defendant, unknown to the plaintiff, finally brought about the direct sale without payment by the seller of any commission to the plaintiff and at a price of $715,000.

The defendant makes much of the fact that the plaintiff, at one point, testified that during his negotiations with McGovern he succeeded in getting the seller's price down to $700,000. It claims that if this were true, it would be ridiculous for it to

stoop to fraud in order to pay $15,000 more for the property than it would have had to pay had it dealt through the plaintiff. There are at least two answers to this claim. First, the jury were not compelled to find that the plaintiff's figure of $700,000 was a judicial admission, nor were they required to accept it as an exact figure in the light of the other testimony of the plaintiff that he was negotiating for $700,000. This is reinforced by Walton's testimony that McGovern told him that, although the lowest price mentioned by the plaintiff was $750,000, the plaintiff thought something around $700,000 would buy the property. *Andrea* v. *New York, N.H. & H.R. Co.*, 144 Conn. 340, 345, 131 A.2d 642. Second, the jury could have inferred that the defendant was able to get the price down to $715,000 only because its conduct had led the seller to believe that the sale was a direct one to which the plaintiff was a stranger and on which no commission would be owing. Although the contract of sale provided for payment of Knight by the purchaser, there is nothing to indicate that the seller was under any obligation to Knight, and the defendant was already obligated to pay him for his services. Thus, payment of Knight for his services added little or nothing to the defendant's cost of acquisition. Furthermore, the seller testified that had the plaintiff effected the sale, he would have expected to pay him the ordinary commission, but it does not appear what the selling price would have been in that case.[2]

Even though the jury may well have accepted the defendant's evidence as to the original innocent

---

[2] Technically, Kreiger did not appear as a witness or testify but gave a sort of informal deposition which both sides agreed to take as a statement of what his testimony would have been had he been personally present in court.

motivation and purpose of its plan to act as an undisclosed principal in attempting to acquire the Locomobile property, the jury could also have found that thereafter, at some time subsequent to the plaintiff's first communication to McGovern and prior to the delivery of the bond for a deed to Gumpper, the defendant decided to utilize that plan for the further and additional purpose, fraudulent in character, of depriving the plaintiff of his opportunity to earn a commission from the seller. The defendant could have had, throughout, an innocent purpose, and at some point have conceived an additional and fraudulent purpose, in pursing its course of conduct in buying the property as an undisclosed principal. See *State* v. *Gerich*, 138 Conn. 292, 298, 83 A.2d 488.

The jury could have concluded that the seller, because of the concealment of the defendant, innocently entered into the direct sale, in which he would be obligated to pay no commission, and that but for this concealment the seller would have consummated the negotiations begun in August, 1962, and thus have entered into an ordinary contract of sale on which he would have been legally obligated to pay the plaintiff his commission.

Although the case was not a strong one, we cannot say that the jury could not reasonably have concluded, as they did, that the plaintiff, rather than Knight, was the effectual procuring cause, and the predominating producing cause, of the sale; that but for the conduct of the defendant, the plaintiff would have earned a commission from the seller; that the conduct of the defendant in making the direct purchase, under the circumstances, was fraudulent; and that as a proximate consequence of that fraudulent conduct the plaintiff was deprived

of an opportunity he would otherwise have had to earn a commission from the seller.

The court was not in error in refusing to set aside the verdict.

### (b)

There remains one claim of error by the defendant in the court's refusal to give a written request to charge. This request was to the effect that even if the jury disbelieved the testimony of the defendant's witnesses concerning its employment in 1961 of its attorney and Knight to make arrangements for the purchase of the property, such disbelief would not satisfy the plaintiff's burden of proving that the defendant first employed them after the plaintiff's conversations with McGovern in August, 1962.

The court correctly refused to charge in accordance with this request. A real estate broker is entitled to a commission if he procures a purchaser ready, willing and able to buy on the terms stated or on terms satisfactory to the owner. *Marshall* v. *Sturgess & Jockmus, Inc.,* 150 Conn. 59, 62, 185 A.2d 472; *Richter* v. *Drenckhahn,* 147 Conn. 496, 500, 163 A.2d 109. In other words, the broker must be the predominating producing cause of the sale. *Brotherhood* v. *Miceli,* 152 Conn. 715, 716, 208 A.2d 340. It is not necessary for him to prove that he was the first to contact, or negotiate with, the purchaser. The negotiations of another, although prior in point of time, are not sufficient to preclude one who arrives late on the scene from earning a commission, if the latecomer is actually the predominating producing cause of the sale. See cases such as *Pentin* v. *Gonsowski,* 138 Conn. 43, 50, 82 A.2d 157. Even if the jury found, as they probably did, that

the defendant employed Knight before the plaintiff approached McGovern, they were not compelled to conclude from that fact, as the request to charge necessarily implied, that the plaintiff was not entitled to recover. The plaintiff was not required to prove that the defendant first employed Knight and others after the plaintiff talked with McGovern but merely that, even though they completed the formalities, they did so after the plaintiff had produced the sale. Since the request was erroneous, the court properly refused to charge in accordance with it. *Bernard* v. *Ribner,* 151 Conn. 670, 673, 201 A.2d 658; *Crowder* v. *Zion Baptist Church, Inc.,* 143 Conn. 90, 100, 119 A.2d 736.

There is no error.

In this opinion ALCORN, HOUSE and RYAN, Js., concurred; THIM, J., dissented.