[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION RE: MOTION TO STRIKE
Plaintiff, Norden Systems, Inc. ("Norden") brings this six count revised second amended complaint, dated February 8, 1990 against the defendant, General Dynamics, Inc., ("General CT Page 3601 Dynamics"). In the first five counts, plaintiff requests damages allegedly sustained as a result of (1) the defendant's breach of contract, (2) the defendant's breaches of a contractual duty of good faith and fair dealings, (3) intentional interference with prospective economic advantage, (4) violations of Conn. Gen. Stat. 42-110a (CUTPA), and (5) fraudulent concealment. In count six, plaintiff, Norden, seeks a determination of the termination provision of the parties contract.
Defendant General Dynamics moves this court to strike counts three and four on the grounds of legal insufficiency.
Plaintiff Norden has alleged the following facts which are relevant to a determination of the defendant's motion to strike.
In 1987 the United States Navy announced that General Dynamics and the McDonnell-Douglas Corporation would be awarded a contract to produce an aircraft which is expected to be in use in the mid-1990's. Prior to this announcement, plaintiff Norden and defendant General Dynamics agreed that if General Dynamics received the aircraft contract, Norden would supply the radar system for the aircraft.
Subsequently, Norden and General Dynamics executed a letter subcontract under which General Dynamics obligated itself to pay Norden over $100 million dollars to design and develop the radar system for the aircraft. The radar subcontract letter stated that it would be superseded by a fixed price definitive contract for work described in the letter no later than May 30, 1988. This definitive contract was never executed.
Norden alleges that, after the execution of the subcontract letter, General Dynamics unilaterally ordered formal and informal changes in the technical requirements for the radar system. The changes allegedly resulted in increased costs and Norden exercised its right to request equitable adjustments in the subcontract price and schedule. The parties did not agree on a revised price and schedule, and plaintiff's performance allegedly continued without a schedule.
Until November of 1988, General Dynamics made progress payments to the plaintiff for its ongoing performance. After November, 1988, General Dynamics allegedly ceased making progress payments without offering any explanation. General Dynamics also discontinued its incremental funding of the radar subcontract from funds received from the Navy and made no funds available after January 6, 1989. Norden allegedly attempted to obtain General Dynamics' compliance and determine its intentions by contacting General Dynamics officials, but without success. CT Page 3602
Plaintiff alleges that General Dynamics' failure to pay progress payments and to make funds available amounted, individually and collectively, to a termination of the contract. This termination, plaintiff alleges, was wrongful and unjustified under the terms of the radar subcontract.
On April 14, 1989, General Dynamics issued a default termination notice to the plaintiff, which notice plaintiff alleges was wrongful and/or had no legal effect in that (1) it was not preceded by a required cure notice, (2) Norden was not in default and (3) in any event, the radar subcontract had already been terminated by General Dynamics' own actions.
Defendant General Dynamics filed a memorandum, a supplemental brief, and a reply in support of its motion to strike counts three and four and plaintiff Norden filed a memorandum in opposition.
The purpose of a motion to strike is to challenge the legal sufficiency of a complaint. Conn. Practice Bk. 152. In reviewing a motion to strike, all pleaded facts and those necessarily implied therefrom are admitted. Amodio v. Cunningham, 182 Conn. 80, 83 (1980). The allegations must be construed in a manner most favorable to the pleader. Mozzochi v. Beck, 204 Conn. 490, 491 (1987).
Defendant General Dynamics challenges plaintiff's third count sounding in tortious interference on the grounds that (1) the count fails to allege interference between plaintiff and a third party and (2) plaintiff's claims for damages are too speculative to amount to the requisite actual loss.
In support of its argument that the plaintiff's failure to allege an economic relationship with a third party renders count three legally insufficient, defendant General Dynamics cites extra judicial cases in which courts held that actual damage to a business relationship expectancy with a third party was a necessary element of the tort. Ellis v. City of Valdez,686 P.2d 700, 708 (Alaska 1984) (court concluded that the tort contemplated wrongful interference with a developing relationship by an outsider to that relationship); Riseman v. Orion Research, Inc., 394 Mass. 311, 475 N.E.2d 398 (1985) (court found that defendant corporation could not tortiously interfere with its own relationship with plaintiff stockholder).
Research discloses that it is considered tortious either to induce a breach of contract or to interfere with financial expectancies. Connecticut courts have tended to confuse the two separate actions and, consequently, there is no clear enumeration of their requisite elements. CT Page 3603
The tort of interference with contractual relations only lies when a third party adversely affects the contractual relations of two other parties. Heirs v. Cohen, 31 Conn. Sup. 305,310 (1973) Citing R and W Hat Shop, Inc. v. Sculley,98 Conn. 1, 14 (1922).
The tort of interference with economic expectancies has been recognized in Connecticut since the case of Bulkley v. Storer, 2 Day (Conn.) 531 (1807). See Also Sportsmen's Boating Corp. v. Hensley, 192 Conn. 747, 754 (1984); Busker v. United illuminating Co., 156 Conn. 456, 461 (1968); Golembeski v. Metichewan, Grange No. 190, 20 Conn. App. 699, 702-03 (1990), cert. den.,214 Conn. 809 (1990); Selby v. Pelletier, 1 Conn. App. 320, 322
(1984). The essential elements of this cause of action are: (1) that the defendant's conduct was tortious conduct, such as fraud; and (2) that as a consequence of such conduct, the plaintiff suffered actual loss as alleged, in being deprived of an opportunity which he would otherwise have had. Selby,1 Conn. App. at 323-24, citing Busker, 156 Conn. at 461. In order to succeed on a claim of tortious interference with business expectancies, however, the plaintiff must do more than show that the defendant's actions proximately caused a loss to the plaintiff's business. He must prove that the defendant was guilty of fraud, misrepresentation, intimidation or molestation, or that the defendant acted maliciously. Sportsmen's,192 Conn. at 754. (citations omitted)
It is clear that a plaintiff must allege tortious conduct such as fraud or misrepresentation, or that the defendant acted maliciously. Sportsmen's supra. In paragraph 19, as incorporated into count three, plaintiff, Norden alleges that General Dynamics misrepresented Norden's performance concerning subcontract progress, and that defendant General Dynamics covertly decided to cancel the subcontract, obtained another supplier, and yet advised Norden that Norden's performance was satisfactory. Plaintiff Norden continues that the defendant General Dynamics' acts constituted malicious and deliberate interference with economic advantages potentially flowing to Norden under, and as a result of, the radar subcontract. These allegations satisfy the tortious element.
Connecticut decisions remain unclear on the issue of whether a plaintiff must plead interference with a business expectancy with a specific third party to state a valid cause of action. The cause of action is closely related to the tort of 1, interference with contractual relationships, which requires a contract between parties and interference by a third. See, W. Prosser W. Keeton on Torts 130. CT Page 3604
Count three of plaintiff's complaint alleges that it expected to enjoy future economic advantages in the form of production options, subcontracts in follow-on and derivative programs, both foreign and domestic. This allegation fails to specifically identify the third party or parties with whom Norden could enter into such subcontract programs. This court finds that, in order to satisfy the elements of tortious interference with prospective economic advantage, such specific identification of a third party is required. Because count three fails to make such specific identification, it is legally insufficient.
Additionally, defendant argues that the second element of, the tort, actual loss of prospective economic opportunity, is factually and legally speculative. Defendant points to the fact that the award of any future revenues or profits stemming from production options to the subcontract is subject to a number of contingencies outside the contract.
Norden alleges that the defendant's wrongful acts have caused, and will continue to cause substantial economic harm to Norden, including. . .costs involved with winding up the radar subcontract, lost future revenues and profits under the radar subcontract and expected follow-on and derivative subcontracts, unabsorbed overhead, damage to goodwill and reputation, and diminution of future business prospects, going business value and market value (count three, para. 18). To say the least, without further identification, this is pure speculation. Norden does not allege that the services it possessed were unique or that there was a specific market for these services. No allegation is made as to why the market would have chosen Norden over some other manufacturer. In order to satisfy this element, plaintiff must show that some third party would contract with plaintiff due to that unique or specialized skill or knowledge. Therefore, the court finds that this allegation is factually and legally speculative and, as such, does not allege an actual loss as required.
For the foregoing reasons, count three of the amended complaint is stricken.
In count four plaintiff alleges that General Dynamics' wrongful acts constitute unfair trade practices in violation of CUTPA. In determining whether a practice violates CUTPA, the court examines three criteria: (1) whether the practice, without necessarily having been previously considered unlawful, offends public policy. . ., the common law, or some other concept of unfairness; (2) whether it is immoral, unethical, oppressive, or unscrupulous; (3) whether it causes substantial injury to consumers [competitors, or other businessmen.]. Sanghavi v. CT Page 3605 Paul Revere Life Ins. Co., 214 Conn. 303, 311- 12 (1990); Daddona v. Liberty Mobile Home Sales, Inc., 209 Conn. 243, 254
(1988); Web Press Services Corp. v. New London Motors, Inc.,203 Conn. 342, 355 (1987). It is not necessary that all three criteria be satisfied. Atlantic Richfield Co. v. Canaan Oil Co., 202 Conn. 234, 242 (1987). A practice may be unfair because of the degree to which it meets one of the criteria, or because to a lesser degree it meets all three. Id.
As previously noted, Norden has alleged that General Dynamics issued a default notice to the plaintiff knowing that the default was false, and after having stated that plaintiff's performance was satisfactory. Plaintiff further alleges that General Dynamics continued to advise Norden that it was satisfied with its performance even after General Dynamics decided to cancel the radar subcontract and award it to another supplier. Norden alleges that General Dynamics' course of conduct with respect to the purpose underlying its demands for added performance by the plaintiff was pretextual, misleading and without factual or legal justification.
Defendant counters that plaintiff has failed to allege an unfair practice under CUTPA because the fraud allegations upon which plaintiff bases the claim, have not been pled with particularity. Plaintiff has rested its "unfairness" claim upon the common law tort of intentional misrepresentation. See Miller v. Appleby, 183 Conn. 51, 55 (1981). Whether plaintiff has alleged fraud or intentional misrepresentation upon which plaintiff relied, the allegations of count four are sufficient to "come within the penumbra of some common law, statutory or other established concept of unfairness." Daddona v. Liberty Mobile Homes, 209 Conn. at 254. In this case, the plaintiff, a military systems supplier, has alleged that the defendant, a military defense contractor, has knowingly misled the plaintiff, in the context of a contract to produce aircraft necessary for the national defense. These allegations clearly rise to the level of unfairness, and given the military defense context of the contract, may make out a claim for violation of public policy. Whether plaintiff is able to prove these allegations remains to be determined at a later point in these proceedings. "In judging a motion to strike, however, it is of no moment that the plaintiff may not be able to prove [his] allegations at trial." Levine v. Bess and Paul Sigel Hebrew Academy of Greater Hartford, Inc., 39 Conn. Sup. 129, 130 (1983). Accordingly, the motion to strike the fourth count alleging violations of the Connecticut Unfair Trade Practices Act is denied.
CIOFFI, J.
James H. Lee, Esq. CT Page 3606 Roy H. Ervin, Esq. John F. Fallon, Esq. Christopher J. Smith, Esq.