[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION re MOTIONS FOR SUMMARY JUDGMENT (#131 AND 141)
Before the court is a motion for summary judgment by the co-defendants Connecticut Bar Association and three named attorneys who acted in the Associations' behalf. For the purpose of this decision the four defendants will be referred to as the "CBA" The motion is directed to the second, third and fourth counts of the plaintiff's amended revised complaint (#111), dated October 24, 1995.
Also before the court is the plaintiff's motion for summary judgment which seeks a determination of liability against the CBA.
The plaintiff is a practicing attorney with the firm of Bender Anderson, P.C. who represented a condominium association in the collection of common charges owed by S. Wayne Alvarez.[1]
Following his payment of the amount owed, including attorney's fees, Alvarez sought help from the CBA's Legal Fee Arbitration Board in obtaining a refund of the sum charged by the plaintiff to his client for legal services, which sum was collected from Alvarez.
The parties agree that Attorney Bender was not a member of the CBA and had no attorney-client relationship with Alvarez at all times relevant.
Although the plaintiff refused to participate, the CBA, at Alvarez' request, conducted a hearing on the latter's complaint CT Page 9696 regarding the reasonableness of the plaintiff's fee. A panel of three attorneys who held a hearing on the complaint decided in favor of Alvarez to the extent of an overcharge of $400. When the plaintiff refused Alvarez' demand for a refund of the sum, he filed suit against Bender in the Small Claims Division of this court. Allegedly to protect his right of appeal, Bender successfully moved to transfer the case to the regular docket (Case No. CV-249103). On July 29, 1997, Bender's motion to dismiss the Alvarez action was granted by the court (DiPentima, J.) for lack of subject matter jurisdiction. No appeal of that order has been filed.
In the plaintiff-Bender's amended complaint he alleges that the CBA falsely represented the scope of its authority and jurisdiction in matters involving attorney's fee disputes. In two additional counts of the complaint the plaintiff charges that the CBA tortiously interfered with a contractual relationship between Bender and his client, the condominium association, and that the acts were oppressive, illegal, and/or unscrupulous, all in violation of the Connecticut Unfair Trade Practices Act (CUTPA), Sec. 42-110a, et seq., Conn. Gen. Stat.
In its motion for summary judgment the defendant denies any misrepresentation of authority or jurisdiction. It points out that Section IV of its Rules for Legal Fee Disputes provides as follows:
 "The board and committee shall have jurisdiction over any disagreement concerning the fee paid, charged or claimed for legal services rendered by a lawyer who practices law in the State of Connecticut, where there exists an express or implied contract establishing an attorney-client relationship and the person or firm allegedly liable for the payment of the fee in dispute submits to the jurisdiction of the committee."
(underlining added).
In its rules the CBA also concedes that it is "a private, voluntary, professional association and, as such, has no official jurisdiction over the activities of individual lawyers or law firms."
The CBA argues that Bender, as alleged in his complaint, is not a member of the Connecticut Bar Association and at no time did he agree, expressly or impliedly, to submit to the authority of the fee dispute committee or to participate in its CT Page 9697 proceedings. Therefore, it urges, based on the clear language of the Rules, that it has no jurisdiction in regard to the instant fee dispute and claims none.
Since, as may be inferred, CBA's decision in the matter was purely advisory, it points out, again relying on the language of its rules, that it lacked any enforcement authority:
 "In any case in which both the complainant and the respondent signed a consent to binding arbitration, any award may be enforced by any court of competent jurisdiction as provided by the law of the State of Connecticut." (underlining added). Section VII, Enforcement of the Award.
The defendant argues on the applicable facts, especially its lack of jurisdiction over the subject matter, that there was no tortious interference with Bender's contractual relationship with his client and the former suffered no loss. In the absence of any such injury and the purported lack of any consequence to the plaintiff based on conduct of CBA that might be deemed immoral, oppressive, illegal and/or unscrupulous, the defendant urges that the facts and the law lend no support to a complaint based on a CUTPA violation.
This court has devoted hours of its time in an effort to resolve this litigation, which may best be described as trivial and which most certainly should have been avoided at all cost. The CBA knew that Attorney Bender was not one of its members, that he had no intention of participating in any arbitration proceeding, and that it was his wish that the hearing not be held.
Despite the above the CBA gave notice to the plaintiff and to Mr. Alvarez that a panel had been designated to hear the Alvarez complaint. The CBA admonished Bender that unless he consented to binding arbitration he would not be permitted to participate in the hearing, including the presentation of evidence or argument. Besides being unnecessary, the warning could only have exacerbated the contentiousness that was rapidly developing between the adversaries. How much more prudent it would have been for the CBA simply to have refrained from conducting the hearing when it was clear that it involved a respondent who was a non-member of the Association who wanted no part of its service.
The plaintiff himself in not free from blame. The Alvarez CT Page 9698 complaint should have been resolved on some reasonable basis by the parties themselves (i.e., Alvarez and Bender) at an early hour. The failure of Bender to address the issue and his intransigent and intimidating stance[2] following CBA's involvement in the dispute has resulted in a lawsuit, ostensibly over $400, that has been pending for more than two years and a court file that contains more than forty diverse pleadings. It is ludicrous to think that a jury should be required to devote several days of trial to a case which can only serve to place the legal profession in a bad light.
Summary judgment may be granted when the pleadings, affidavits, and other documentary proof show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Suarez v. DickmontPlastics Corp., 229 Conn. 99, 105 (1994); P.B., Sec. 384. In ruling on such motion the court determines whether an issue of fact exists, but if it does exist, the court does not try the issue. Michaud v. Gurney, 168 Conn. 431, 433 (1975).
A motion for summary judgment is "designed to eliminate the delay and expense incident to a trial when there is no real issue to be tried.[3] Stephenson, Conn. Civ. Proc. (1966 Supp.), Sec. 131."Dowling v. Kielak, 160 Conn. 14, 16 (1970). But the burden of showing the nonexistence of a material fact rests with the movant. Suarez v. Dickmont Plastic Corp., supra; and in deciding such question "the trial court must view the evidence in the light most favorable to the nonmoving party . . . . The test is whether a party would be entitled to a directed verdict on the same facts." New Milford Savings Bank v. Roina,38 Conn. App. 240, 244 (1995).
 I
A false representation in law is one that is known to be untrue, or is made without belief in its truth, and is made for the purpose of inducing action upon it. Clark v. Haggard,141 Conn. 668, 673 (1954). In order to recover on a cause of action based on false representation, four essential elements must be established: "(1) that a false representation was made as a statement of fact; (2) that it was untrue and known to be untrue by the party making it; (3) that it was made to induce the other party to act on it; and (4) that the latter did so act on it to his injury." Miller v. Appleby, 183 Conn. 51, 55-55 (1981). CT Page 9699
Even if it can be said that the CBA's representations of authority of its Legal Fee Arbitration Board were false, and known to be so, and were intended to induce the plaintiff-Bender to act thereon, the fact of the matter is that Bender never relied, nor did he intend to rely, upon the representations. While it may be argued that Alvarez acted on a misrepresentation by the defendant,[4] and experienced some degree of injury as a result, Bender was not induced to act and in fact did not act to his own injury. Cf. Helming v. Kashak, 122 Conn. 641, 644 (1937). An essential element is clearly lacking.
 II
The essential elements of the tort of unlawful interference with a business relationship are (1) a business relationship between the plaintiff and another party; (2) the defendant's intentionally interfering with it while knowing of the relationship, and (3), as a result of the interference, the plaintiff suffering actual loss. DiNapoli v. Cooke,43 Conn. App. 419, 426 (1996). In order for the plaintiff to recover on his claim that CBA tortiously interfered with a business relationship (viz., Bender's relationship with his own client) the evidence must demonstrate "that the defendant was guilty of fraud, misrepresentation, intimidation, or molestation; Busker v. United Illuminating Co., 156 Conn. 456, 461, 242 A.2d 708 [1968]; . . . or that the defendant acted maliciously." Sportsmen's BoatingCorporation v. Hensley, 192 Conn. 747, 754 (1984).
Apart from the need to prove that CBA, in its dealings with Alvarez, was guilty of any one of the above described wrong-doings, the evidence must establish that the interference was intentional. That requirement is dispositive of the issue presented, for, when questions of intent and state of mind are implicated, summary judgment is ordinarily quite inappropriate. Reynoldsv. Chrysler First Commercial Corp., 40 Conn. App. 725, 731, cert. den.237 Conn. 913 (1996). A question of intent raises an issue of material fact which cannot be decided on a motion for summary judgment. Suarez v.Dickmont Plaza Corp., supra 111. Here, CBA in defense has presented a factual predicate (i.e., its arbitration rules) which at the very least raises such an issue.
 III
Sec. 42-110b (CUTPA), sub-para. (a), provides that "[n]o person shall engage in unfair methods of competition and unfair CT Page 9700 or deceptive acts or practices in the conduct of any trade or commerce." Assuming that the CBA, when providing its fee-dispute resolution service, is engaged in a trade or commerce as those terms are defined; Sec. 42-110a(4); Cf. Heslin v. Connecticut LawClinic of Trantola Trantola, 190 Conn. 510, 516-19 (1983); whether the plaintiff is entitled to relief, even assuming the allegations of his complaint are true, is an issue which remains glaringly present. In short, it is the absence of a nexus between the parties which bars application of the statutory relief that is sought:
 "[A]lthough private litigation under this act is essential . . . it strains credulity to conclude that CUTPA is so formless as to provide redress to any person, for any ascertainable harm, caused by any person in the conduct of any trade or commerce. Although privity, in the traditional contractual sense of an exchange of consideration between parties, may no longer be essential for standing under CUTPA, a claimant under CUTPA must possess at least some type of consumer relationship with the party who allegedly caused harm to him or to her."
 Jackson v. R. G. Whipple, Inc., 225 Conn. 705, 725-27
(1993).
It is the court's finding that the plaintiff-Bender possessed no such consumer relationship with the defendant, and from day-one made it clear that he wanted none. Under the circumstances he is hardly in a position to claim the benefit of the statute and the relief it affords.
 IV
In accordance with this opinion the following orders may enter:
 (1) The plaintiff's motion for summary judgment as to the second, third, and fourth counts of the complaint (#111) is denied.
 (2) The defendant's motion for summary judgment as to the second and fourth counts of the complaint is granted, and its motion as to the third count is denied.
Gaffney, J. CT Page 9701